State of Arizona Board of Regents, University of Arizona, Defendant-Intervenor-Appellee.

Nos. 89–16138, 90–15400, 90–16125 and 90–16172.

United States Court of Appeals, Ninth Circuit.

April 9, 1991.

MT. GRAHAM RED SQUIRREL, (Tamiasciurus hudsonicus grahamensis), an Endangered Species, Sierra Club, a Non–Profit Corporation, National Audubon Society, a Non–Profit Corporation, National Wildlife Federation, a Non–Profit Association, Arizona Wildlife Federation, a Non–Profit Corporation, Maricopa Audubon Society, a Non–Profit Association, Tucson Audubon Society, a Non–Profit Association, Prescott Audubon Society, a Non–Profit Association, Yuma Audubon Society, a Non–Profit Association, Northern Arizona Audubon Society, a Non–Profit Association, Defenders of Wildlife, Non–Profit Organization, Wayne Woods, an Individual, Plaintiff–Appellant,

v.

Clayton YEUTTER, in His Official Capacity as Secretary of Agriculture, F. Dale Roberton, in His Official Capacity as Chief Forester, U.S. Forest Service, David F. Jolly, in His Official Capacity as Regional Forester for the Southwest-

704

Mark Hughes, Sierra Club Legal Defense Fund, Denver, Colo., for plaintiffs-appellants.

M. Alice Thurston, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Daivid C. Todd, Patton, Boggs & Blow, Washington, D.C., for defendant-intervenor-appellee.

William Perry Pendley, Mountain States Legal Foundation, Denver, Colo., for applicant-in-intervention-appellant.

Before TANG, FLETCHER and REINHARDT, Circuit Judges.

### ORDER

On June 4, 1990, the district court granted summary judgment to the defendants on seven of plaintiffs' nine claims. The first claim sought to preclude further construction on Mount Graham on the basis that the Forest Service is required to reinitiate formal consultation with the Fish and Wildlife Service pursuant to section 7 of the Endangered Species Act. The other claims on which the district court granted summary judgment stated that the Forest Service had violated the National Forest Management Act by failing to maintain a minimum viable population of red squirrels, that the Fish and Wildlife Service had violated section 4 of the Endangered Species Act by failing to designate critical habitat in a timely manner, and that the Forest Service had violated section 9 of the Endangered Species Act by facilitating a dramatic popu-

lation decline of the Mount Graham red squirrel. The only claims not affected by the summary judgment order were claims 5 and 9, which involved compliance with the terms and conditions of the Arizona–Idaho Conservation Act.

The plaintiffs appealed from the grant of partial summary judgment (the August 2 appeal). Then, on August 27, they moved, in the district court, for a preliminary injunction barring further construction, on a number of grounds. The district court denied the motion without holding an evidentiary hearing, stating that it lacked jurisdiction because several of plaintiffs' claims were already on appeal. In doing so, the district court failed to consider the two claims that were not on appeal, namely claims 5 and 9. Claim 5 alleged that the Forest Service had violated the provisions of the Arizona–Idaho Conservation Act by failing to implement the terms and conditions of Reasonable and Prudent Alternative Three of the Biological Opinion. Specifically, plaintiffs alleged that the monitoring program was improper, that certain roads required to be closed remain open, and that the Forest Service had failed to reinitiate consultation in violation of the Arizona–Idaho Conservation Act. Claim 9 alleged that the Forest Service's failure to implement the terms and conditions of Reasonable and Prudent Alternative Three constituted a "taking" of the Mount Graham red squirrel in violation of section 9 of the Endangered Species Act, thus incorporating the monitoring allegations.

Plaintiffs then appealed from the denial of the preliminary injunction (the September 4 appeal). Thus, claims 5 and 9 are now before us.

We will address the merits of plaintiffs' allegations regarding reconsultation in a subsequent opinion, and do not discuss those allegations now. At oral argument, plaintiffs conceded that the allegations regarding the road closures do not support the issuance of a preliminary injunction. However, there was no such concession regarding the monitoring program allegations. To the contrary, those allegations, if

proved, might well support the issuance of such an order.

The monitoring allegations were properly before the district court on August 28, when it refused to act because it believed it lacked jurisdiction. The claims involving those allegations had not been appealed and the district court retained jurisdiction to act on them. We now remand to the district court for the limited purpose of holding an evidentiary hearing to determine whether the plaintiffs are entitled to a preliminary or permanent injunction on the basis of their allegations that the monitoring program currently in existence is not in compliance with the Arizona–Idaho Conservation Act. Any such injunction could, of course, enjoin construction activity only until such time as a proper monitoring program is instituted.

We note that the monitoring requirements are an important component of the Arizona–Idaho Conservation Act. Not only do the terms and conditions of Reasonable and Prudent Alternative Three of the Biological Opinion, which are expressly incorporated into the Arizona–Idaho Conservation Act, require that monitoring occur, but an effective monitoring program is also a necessary prerequisite to carrying out the mandate of section 603(b) of the statute regarding the second phase of construction. A monitoring program that yields questionable information is of little value in determining the effects of construction on the Mount Graham red squirrel. Moreover, any new monitoring program that comes into existence after construction is underway could not provide the full data necessary to document its effects accurately.

In view of the above, we also enter the following order: The plaintiffs shall within five days of the date of this order file an application with the district court for a temporary restraining order staying construction pending the district court's decision whether to grant or deny a preliminary or permanent injunction. The district court shall hold a limited evidentiary hearing on that application at the earliest practical date. Any hearing on a preliminary or permanent injunction shall be a full eviden-tiary hearing. The parties may of course by mutual consent waive any hearing referred to herein. Construction on the first three telescopes and necessary support facilities is stayed until such time as the district court rules on the plaintiffs' application for a temporary restraining order; provided that this stay shall terminate if plaintiffs fail to file such an application within five days. The Clerk shall telephone and serve this order on the parties forthwith.

An opinion regarding all other issues raised on appeal will be filed subsequently.

Remanded to the extent and for the purposes set forth above.