CITIZENS TO END ANIMAL SUFFER-
ING AND EXPLOITATION, INC., et
al., Plaintiffs,

v.

The NEW ENGLAND AQUARIUM,
et al., Defendants.

Civ. A. No. 91–11634–WF.

United States District Court,
D. Massachusetts.

Oct. 25, 1993.

Steven M. Wise, Fraser & Wise, Boston, MA, for plaintiffs.

David R. Schmahmann, Nutter, McClennen & Fish, Judith S. Yogman, Atty. Gen.'s Office, Boston, MA, Larry Bradfish, Silvia Sepulveda–Hambor, Charles W. Brooks, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Suzanne E. Durrell, U.S. Atty.'s Office, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

This case is brought by Kama, a dolphin, Citizens to End Animal Suffering and Exploitation ("CEASE"), the Animal Legal Defense Fund, Inc. ("ALDF"), and the Progressive Animal Welfare Society, Inc. ("PAWS"), to protest the transfer of Kama from the New England Aquarium to the Department of the Navy. The parties have named as defendants the New England Aquarium ("the Aquarium"), the Department of the Navy ("the Navy"), the Department of Commerce and two of its subagencies, the National Oceanic and Atmospheric Administration and the National Marine Fisheries Service (collectively referred to as "Commerce").

Defendants have moved to dismiss and for summary judgment on several grounds. They contest the standing of the plaintiffs, the propriety of naming the Aquarium and the Navy as defendants, and the substantive merits of plaintiffs' case. Plaintiffs have moved to amend their complaint to add several counts concerning the transfer of Rainbow, another dolphin whose case was previously settled in this court. They have also moved to dismiss defendants' counterclaims. For the reasons described below, summary judgment should be granted in favor of defendants because plaintiffs lack standing; plaintiffs' motion to amend, filed after defendants' motions for summary judgment, should be denied; and defendants' counterclaims, which are premised on state law, should be dismissed without prejudice to being reinstituted in the courts of the Commonwealth of Massachusetts.

## I. FACTS

Plaintiffs' factual contentions primarily concern the transfer of Kama from the Aquarium to the Navy. Except as noted, the following relevant facts are undisputed.

Kama was born in captivity at Sea World in San Diego in 1981. Kama was transferred to the Aquarium in 1986 for breeding purposes and/or for public display. See Federal Defendant's Motion to Dismiss at ¶ 5; Affidavit of John Prescott ("Prescott Aff.") at ¶ 5, Exhibit A to New England Aquarium's Memorandum of Law in Support of its Motion for Summary Judgment. Kama, however, did not fit into the social climate at the Aquarium. Prescott Aff. at ¶ 6. As a result, he was not regularly on public display, nor

featured in the Aquarium dolphin shows. *Id.;* Affidavit of Kathy Krieger ("Krieger Aff.") at ¶2, Exhibit A to New England Aquarium's Reply Memorandum.[1]

In 1987, the Aquarium wrote to Commerce requesting authorization to transfer Kama and another dolphin to the Naval Oceans Systems Center. *See* Administrative Record at § 7. The Navy also wrote to Commerce, requesting authority to purchase and transport the two dolphins, noting, "These two dolphins will be housed in floating bay pens as specified in Marine Mammal Permit Number #195. *Id.* at § 8. Commerce authorized both requests, and sent the Navy a Letter of Agreement (# AN108), to be signed by the Navy, which set forth the obligations of the Navy to ensure the safety and well-being of the dolphins. *Id.* at §§ 9–10.

In late 1987, Kama was transferred from the Aquarium to the Navy pursuant to this Letter of Agreement. Prescott Aff. at ¶¶ 6–7. Kama is now located in Hawaii, where he is being studied for his sonar capabilities. Declaration of Lester Bivens ("Bivens Decl.") at ¶5, Exhibit 4 to Federal Defendants' Memorandum in Support of its Motion to Dismiss and in the Alternative Motion for Summary Judgment. The Navy has invested over $700,000 and over 3,500 man hours training Kama. *Id.* at ¶4. The Navy contends that Kama is able to associate with wild dolphins on a daily basis, and could swim away if he so desired. *Id.* at ¶3.

Additional relevant facts are discussed in the analysis of defendants' motions for summary judgment.

## II. *SUMMARY OF COMPLAINT AND ISSUES*

### A. *The Statute*

Plaintiffs' cause of action is based upon the Marine Mammal Protection Act ("MMPA"), which was passed in 1978 in order to protect marine mammals populations. *See* 16 U.S.C. § 1361. The primary focus of the statute was to impose a moratorium on the "taking" and importation of marine mammals and ma-

rine mammal products. *See* 16 U.S.C. §§ 1371, 1372. To "take" is defined in the statute as: "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(12). In essence, the MMPA provides that such takings and importations of marine mammals are generally allowed only upon the grant of a permit by Commerce. *See* 16 U.S.C. § 1374.

At issue in this case is whether the transfer, purchase, or sale of an already-captive dolphin constitutes a "taking" which requires a permit. The dispute concerns language under a subsection in the statute entitled "Taking," which states:

> Except as provided in [§§ 1372, 1373, 1374, 1379, 1381, and 1383] of this title, it is unlawful—
>
> .      .      .      .      .
>
> (4) for any person to transport, purchase, sell, or offer to purchase or sell any marine mammal or marine mammal product.

16 U.S.C. § 1372(a)(4). The exception in § 1374 to which § 1372 refers provides that the Secretary of the Department of Commerce may issue permits for "the taking or importation of any marine mammal." 16 U.S.C. § 1374(a). The permit process requires the publication of permit applications, with the opportunity for public comment, and a hearing if requested by "any interested party." 16 U.S.C. § 1374(d)(2), (4). Furthermore, "judicial review of the terms and conditions of any permit" is available to "[a]ny applicant for a permit, or any party opposed to such permit." 16 U.S.C. § 1374(d)(6).

Plaintiffs contend that according to the plain language of § 1372(a)(4), defendants violated the statute by transporting, purchasing, and selling Kama without having obtained a permit from Commerce. Defendants assert that in the context of the statute as a whole, and in view of its purpose, § 1372(a)(4) should be interpreted to apply only to marine mammals in the wild, and that

---

1. Plaintiffs seek further discovery on the dates and times Kama was on public display at the Aquarium.

a permit is not necessary for an already-captive marine mammal.

Plaintiffs claim injury arising out of the transfer of Kama, which denied plaintiffs' members the opportunity to observe and study Kama and allegedly contributes to the depletion of the dolphin population. *See* First Amended Complaint at ¶¶ 4–6. They also claim injury arising out of Commerce's failure to follow the permit procedures for Kama's transfer, which effectively denied plaintiffs and their members notice of the transfer, the opportunity to comment on the transfer and request a hearing, the opportunity to seek judicial review of the grant of a permit for Kama's transfer, and injured plaintiffs' ability to disseminate information to their members. *Id.* Plaintiffs also contend that several other practices of Commerce, detailed below, are contrary to the terms of the MMPA.

### B. *The Complaint*

In their first amended complaint, plaintiffs make six distinct challenges to actions taken by the defendants.

(1) *The Transfer of Kama.* Plaintiffs allege that in 1987, Kama was sold and transferred from the Aquarium to the Navy pursuant to a Letter of Agreement, rather than a permit, which, they assert, is contrary to the provisions of the MMPA. The Navy, the Aquarium, and Commerce are named in this allegation.

(2) *The Transfer Practice.* Plaintiffs allege generally that Commerce's practice of issuing Letters of Agreement rather than permits for transferring marine mammals violates the MMPA.

(3) *The Permit Modification Practice.* Plaintiffs allege that Commerce's practice of failing to notify the public when it issues permit modifications that do not increase the number of marine mammals taken from the wild violates the MMPA and relevant federal regulations.

(4) *Permit # 626.* In conjunction with the allegations regarding the Permit Modification Practice, plaintiffs allege, in particular, that Commerce's failure to notify the public of its modification of permit # 626 granting an extension of time for the permit holder # 626, Aquarium, to take an allotted number of marine mammals from the wild violated the MMPA.

(5) *The Beached or Stranded Marine Mammals Practice.* Plaintiffs allege that the practice of issuing Letters of Agreement, rather than permits, to parties that have rescued beached or stranded marine mammals violates the MMPA.

(6) *Violations of NEPA.* Plaintiffs allege that the practice of issuing Letters of Agreement for the taking, purchasing, selling, or transporting of marine mammals without having prepared an Environmental Assessment violates the National Environmental Policy Act ("NEPA") (42 U.S.C. § 4321, *et seq.*).

Plaintiffs seek declaratory and injunctive relief, enjoining Commerce from engaging in the violative practices and returning Kama to the Aquarium. Defendants have counterclaimed for defamation and abuse of process.

### III. *DISCUSSION*

As noted above, this court's ruling is limited to the issue of plaintiffs' standing. To survive a motion for summary judgment on standing, "[plaintiffs] need show only a 'genuine issue' of material fact as to standing." *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2152, 119 L.Ed.2d 351 (1992) (Blackmun, J., dissenting) (citing F.R.Civ.P. 56(c)). "A 'genuine issue' exists so long as 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). On a motion for summary judgment, the court must view the undisputed facts in the light most favorable to the nonmoving party. *See Attallah v. United States,* 955 F.2d 776, 779 (1st Cir.1992).

Defendants assert in their motions to dismiss and/or for summary judgment that plaintiffs lack standing to maintain this suit. The standing requirement is rooted in the constitutional command in Art. III, § 2, that the federal courts' jurisdiction is limited to "Cases" and "Controversies." The standing doctrine serves to preserve the separation of

powers, to prevent a flood of lawsuits, to improve judicial decision-making by focussing on actual controversies, and to ensure that "people cannot be intermeddlers trying to protect others who do not want the protection sought." *See* E. Chemerinsky, *Federal Jurisdiction* § 2.3.1 (1989 ed.). The issue of standing in this case must be addressed on two bases: the standing of Kama, the dolphin, and the standing of the organizational plaintiffs.

### A. *Kama Lacks Standing*

■ There is little case law addressing whether an animal who has allegedly been injured has standing to bring a suit. Plaintiffs assert that Kama has standing, relying on *Palila v. Hawaii Dept. of Land and Natural Resources*, 852 F.2d 1106, 1107 (9th Cir.1988). In *Palila*, the court stated in its introduction:

> As an endangered species under the Endangered Species Act, ... the bird (Loxioides bailleui), a member of the Hawaiian honey-creeper family, also has legal status and wings its way into federal court as a plaintiff in its own right ... represented by attorneys for the Sierra Club, the Audubon Society, and other environmental parties.

*Id.* However, in *Palila*, the defendants did not challenge the propriety of having an animal as a named plaintiff. Similarly, animal species have remained named plaintiffs in other cases in which the defendants did not contest the issue. *See Mt. Graham Red Squirrel v. Yeutter*, 930 F.2d 703 (9th Cir. 1991); *Northern Spotted Owl v. Lujan*, 758 F.Supp. 621 (W.D.Wash.1991); *Northern Spotted Owl v. Hodel*, 716 F.Supp. 479 (W.D.Wash.1988).

However, in the only reported case in which the naming of an animal as a party was challenged, the court found that the animal did not have standing to bring suit. In *Hawaiian Crow ('Alala) v. Lujan*, No. 91–00191–DAE (D.Haw. Sept. 13, 1991), the court ruled that the 'Alala, an endangered species of birds, did not have standing to maintain a suit challenging the implementation of a program under the Endangered Species Act ("ESA"). The court, while recognizing the authority cited above, denied the 'Alala standing on the bases that: (1) the ESA provided for citizen suits brought by "persons;" (2) the other named parties—various Audubon Societies—could obtain the relief sought; and (3) F.R.Civ.P. 17(c) which provides for suits on behalf of infants or incompetent persons does not apply to animals. *Id.* at 4–6.

The same considerations apply in this case. The MMPA does not authorize suits brought by animals. Rather, the MMPA provides for judicial review of the grant or denial of permits for permit applicants or "any party opposed to such permit" pursuant to 5 U.S.C. § 701 *et seq. See* 16 U.S.C. § 1374(d)(6). Section 702 of Title 5 provides that, "A *person* suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (Emphasis added). Thus, as with regard to the ESA in *'Alala*, the MMPA expressly authorizes suits brought by persons, not animals. This court will not impute to Congress or the President the intention to provide standing to a marine mammal without a clear statement in the statute. If Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly. Furthermore, as in *'Alala*, citizen groups, if they satisfy the standing requirements, could seek to obtain the relief the amended complaint requests for Kama.

This conclusion is reinforced by consideration of F.R.Civ.P. 17(b), which falls within the section of the Rules entitled "Parties," and discusses the "capacity of an individual ... to sue or be sued." It provides that such capacity "shall be determined by the law of the individual's domicile." While this provision generally addresses the capacity of corporations, partnerships, and other business entities to litigate, there is no indication that it does not apply to other non-human entities or forms of life. While neither Massachusetts nor Hawaii law addresses the precise question of animal standing, cases in each state indicate that animals are treated as the

property of their owners, rather than entities with their own legal rights. *See e.g., Massachusetts Society for Prevention of Cruelty to Animals v. Commissioner of Public Health,* 339 Mass. 216, 158 N.E.2d 487 (1959); *State of Hawaii v. Pokini,* 45 Haw. 295, 367 P.2d 499 (1961).

Accordingly, the MMPA and the operation of F.R.Civ.P. 17(b) indicate that Kama the dolphin lacks standing to maintain this action as a matter of law. Defendants have moved, therefore, for the removal of Kama's name from the caption of this case. This motion must be allowed.

### B. *Standing of the Organizational Plaintiffs*

The MMPA does not authorize citizen suits to challenge the transfer of a marine mammal. Therefore, plaintiffs bring this case under 5 U.S.C. § 702, which provides:

> A person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.[2]

In two recent cases, the Supreme Court has reviewed and clarified the requirements for standing for organizations challenging agency actions relating to animals. *See Lujan v. Defenders of Wildlife ("Lujan v. DOW"),* ⎯ U.S. ⎯, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (plurality opinion)[3]; *Lujan v. National Wildlife Federation ("Lujan v. NWF"),* 497 U.S. 871, 891, 110 S.Ct. 3177, 3190, 111 L.Ed.2d 695 (1990). As the Court explained in *Lujan v. DOW,* the requirements for standing are as follows:

> First the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized, ... and (b) "actual or imminent," not 'conjectural' or 'hypothetical'.... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result

[of] the independent action of some third party not before the court." ... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

⎯ U.S. at ⎯, 112 S.Ct. at 2136 (citations omitted). As noted above, on summary judgment, plaintiffs need only demonstrate that there is a genuine issue of material fact; they do not bear the burden of proving "that they are actually or imminently harmed." *Id.* at ⎯, 112 S.Ct. at 2152 (Blackmun, J., dissenting).

In *Lujan v. DOW,* plaintiffs challenged a government regulation that indirectly affected endangered species outside of the United States. The Court noted that when a party asserts an injury arising from government regulation of another party, standing is more difficult to establish. The Court explained:

> In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well.

*Id.* at ⎯, 112 S.Ct. at 2137. The Court concluded that:

> When the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish.

*Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 758, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984)).

The plaintiff organizations in this case claim standing on two bases. Each claims that it has standing to sue representatively, on behalf of its members, and for the injuries the organization has itself suffered. Their allegations of harm fall into four broad categories. First, plaintiffs allege that their members have suffered injury to their aesthetic, conservational, or recreational interests because they can no longer observe

---

**2.** Even judicial review of the grant or denial of permits, which is expressly provided for in the MMPA, is pursuant to 5 U.S.C. §§ 701 *et seq. See* 16 U.S.C. § 1374(d)(6).

**3.** Six Justices concurred in all of the opinion except the section on redressability, in which only four joined. Seven Justices concurred in the judgment.

Kama at the Aquarium. *See* First Amended Complaint at ¶¶ 4–6. Second, they allege injury to their members' aesthetic, conservational, or recreational interests in that Commerce's actions result in the reduction in number of wild dolphins available for members to observe, study, or photograph. *Id.* Third, they allege a variety of procedural harms suffered both by their members and by the organizations themselves. As Commerce now allows transfers to take place pursuant to Letters of Agreement (written from Commerce to the transferor and transferee), without public notice or opportunity for public comment, plaintiffs claim they are deprived of their opportunity to participate in the public process established by the MMPA. *Id.* Finally, plaintiffs allege that the organizations themselves suffer informational harm, in that Commerce's practices of using Letters of Agreement, failing to publicize permit modifications, and failing to produce environmental impact statements deprive plaintiff-organizations of information which they seek to disseminate to their members. *Id.* As plaintiffs have alleged sufficient harm to withstand a motion to dismiss, their allegations of harm must be reviewed in the context of summary judgment.

1. *Plaintiffs' standing to sue on behalf of its members*

■ For an organization to have standing to sue on behalf of its members, it must demonstrate that:

(1) at least one of the members possesses standing to sue in his or her own right; (2) the interests that the suit seeks to vindicate are pertinent to the objectives for which the organization was formed; and (3) neither the claim asserted nor the relief demanded necessitates the personal participation of affected individuals.

*United States v. AVX Corp.,* 962 F.2d 108, 116 (1st Cir.1992) (citing *UAW v. Brock,* 477 U.S. 274, 282, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986)) (examining the National Wildlife Federation's right to intervene).

In this case, both the second and third prongs of this test have been met. Each of the three plaintiff organizations has submitted a general purpose statement of its organization, which includes, in some fashion, the protection of animals. As damages are not sought, individual plaintiffs need not participate. Plaintiffs fail, however, to offer evidence sufficient to permit a reasonable factfinder to conclude that any of their individual members possesses standing to sue.

(a) *Plaintiffs' members are not harmed by their inability to observe and study Kama.*

■ Plaintiffs allege that as a result of Kama's transfer, they have suffered harm by having been deprived of the opportunity to observe and study Kama. In *Lujan v. DOW,* the Court stated:

Of course, the desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing. . . . But the "injury in fact" requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured. To survive . . . summary judgment . . ., respondents had to submit affidavits or other evidence showing, through specific facts, . . . that one or more of respondents' members would thereby be "directly" affected apart from their " 'special interest' in th[e] subject."

—— U.S. at ——–——, 112 S.Ct. at 2137–38 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972)). In *Lujan v. DOW,* the respondents had sued the Secretary of the Interior for violating the ESA by revising a regulation that required agency review of the environmental consequences of any federal agency action. The revised regulation required review only of actions taken in the United States or on the High Seas. Members of the organization, Defenders of Wildlife, submitted affidavits which stated that they had visited specific foreign countries to observe wildlife, and noted that specific federal agency actions in those countries would have the effect of destroying the natural habitats of the wildlife. *See* —— U.S. at ——, 112 S.Ct. at 2138. The affidavits also alleged that the members planned to return to these countries for further wildlife observation at unspecified times in the future.

The Court held that these allegations of harm were insufficient to create standing. The Court specifically noted that the allegations of unspecified, future visits failed to establish that imminent harm would occur. The Court stated:

> Such "some day" intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the "actual or imminent" injury that our cases require.

*Id.* at ——, 112 S.Ct. at 2138.

In the present case, plaintiffs also fail to allege actual or imminent harm. Plaintiffs have submitted two affidavits of their members relating to the observation of Kama. Both affidavits state that:

> During the time Kama was at the New England Aquarium, I attended dolphin shows and saw dolphins on public display there several times. I saw three dolphins perform at these dolphin shows.

Affidavit of Doreene Close ("Close Aff.") at ¶ 8, Exhibit C to Plaintiff's Memorandum in Support of its Opposition; Affidavit of Sarah Luick ("Luick Aff.") at ¶ 2, Exhibit L to Plaintiff's Memorandum in Support of its Opposition. The affiants do not state either that they have returned to the Aquarium and have suffered injury because of Kama's absence, or intend to return in the near future. As in *Lujan v. DOW*, the failure to allege that any actual or imminent harm is fatal to an assertion of standing. —— U.S. at ——, 112 S.Ct. at 2138. The court recognizes, however, that this defect might possibly be remedied if plaintiffs were allowed to file supplementary affidavits.

More significantly, the affiants have not alleged the particular relationship with Kama necessary to cause them to be harmed by his absence even if they plan to return to the Aquarium. In *Lujan v. DOW*, the Court stated that:

> It is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of his interest will no longer exist. It is even plausible— though it goes to the outermost limit of plausibility—to think that a person who observes or works with animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing such harm, since some animals that might have been the subject of his interest will no longer exist.

—— U.S. at —— – ——, 112 S.Ct. at 2139–40. The affiants in this case do not, and evidently cannot, state that they ever observed Kama in particular, as opposed to dolphins in general, at the Aquarium.

Plaintiffs seek discovery on whether Kama was ever on public display or included in any dolphin shows at the Aquarium. The Aquarium asserts that Kama was not regularly on display, nor included in any dolphin shows. The fact that neither affiant knows if she actually observed Kama belies any possible assertion that either of them had established a relationship with Kama such that, as a result of his transfer, "the very subject of [the member's] interest will no longer exist." The affiants only allege that they observed *dolphins* during the time that Kama was at the Aquarium. *See* Close Aff. at ¶ 8; Luick Aff. at ¶ 2. (Emphasis added.) After Kama's departure, dolphins were still available for observation. *See* Krieger Aff. at ¶¶ 2–3. Furthermore, the fact that plaintiffs were, by their own admission, unaware of Kama's transfer until 1990, three years after the transfer took place, indicates that none of plaintiffs' members noted or were harmed by Kama's absence. Rather, the affiants observed dolphins at the Aquarium, and were able to continue to do so after Kama's transfer. As they do not know if they ever observed Kama, did not notice his absence for three years, and because he was not regularly on display, it is unlikely that they ever observed him. In these circumstances, it is evident that the discovery plaintiffs seek would not be helpful. There is simply insufficient evidence for a reasonable factfinder to conclude that they are or will be harmed by Kama's transfer.[4]

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 698,

---

4. Plaintiffs assert that they are injured simply by losing the opportunity to observe Kama, citing

**(b) *Plaintiffs members have not suffered harm concerning the depletion of wild dolphins.***

■ Plaintiffs allege that Commerce's actions in allowing the transportation of dolphins, permit modifications, and the rescue of beached or stranded dolphins will result in fewer dolphins in the wild for plaintiffs' members to observe and study.[5] Pursuant to the Court's decision in *Lujan v. DOW*, these allegations, with the accompanying evidence, are also insufficient to permit a reasonable factfinder to conclude that plaintiffs have suffered actual or imminent harm.

Whether plaintiffs have sustained an injury that is "actual or imminent" and "concrete and particularized" is determined by the nature of plaintiffs' relationship to the party or thing being regulated. *Lujan v. DOW*, — U.S. at —, — – —, 112 S.Ct. at 2136, 2139–40. As noted above, the Court stated:

It is even plausible—though it goes to the outermost limit of plausibility—to think that a person who observes or works with animals of a particular species in the very area of the world where that species is threatened by a federal decision is facing such harm, since some animals that might have been the subject of his interest will no longer exist.

— U.S. at — – —, 112 S.Ct. at 2139–40 (citing *Japan Whaling Association v. American Cetacean Society*, 478 U.S. 221, 231 n. 4, 106 S.Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986)).

Plaintiffs have not offered sufficient evidence of harm to have standing even under this "outermost limit" test. Even if plaintiffs could demonstrate that Commerce's actions have resulted in the depletion of wild dolphins somewhere, plaintiffs have not offered any evidence that the depletion occurs in any particular place, or that their members have or will be harmed by the depletion in that place. *Cf. Didrickson v. United States Department of the Interior*, 982 F.2d 1332, 1340–41 (9th Cir.1992) (holding that organizations interested in animals had standing to challenge regulation of concerning Alaskan sea otters where groups had submitted affidavits of members who lived in Alaska and observed and studied sea otters in specific areas of Alaska). In *Lujan v. DOW*, the Court expressly rejected the "animal nexus" test for standing "whereby anyone who has an interest in studying or seeing the endangered animals anywhere on the globe has standing." — U.S. at —, 112 S.Ct. at 2139. The Court found that this test lacking because it did not require "a factual showing of perceptible harm." *Id.* Thus, plaintiffs' allegations and evidence regarding their general concern for the depletion of dolphins is insufficient.

Second, and more significantly, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant.'" *Lujan v. DOW*, — U.S. at —, 112 S.Ct. at 2136 (citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)). Plaintiffs have not produced evidence to support the contention that the practices of Commerce which are challenged in this case actually cause a reduction in number of wild dolphins. With respect to the permit modifications, the plaintiffs provide no evidence that the challenged modifications, which only affect the time span during which takings are

---

93 S.Ct. 2405, 2421, 37 L.Ed.2d 254 (1973), for the proposition that a minimal injury may confer standing. However, regardless of the size of the injury, plaintiffs' loss of the opportunity to observe Kama is not "concrete," as required by *Lujan v. DOW*. *See* — U.S. at —, 112 S.Ct. at 2136. As neither Close nor Luick can identify Kama, as opposed to any other dolphin, as the object of their study and observation, they cannot in the circumstances of this case have been injured by his transfer.

**5.** Presumably, these allegations of harm also relate to plaintiffs' specific challenge of the permit

modification of permit # 626, which granted the Aquarium an extension of time to take marine mammal from the wild, due to a moratorium on taking that had been imposed after the original permit was granted. The permit modification did not increase the number of dolphins the Aquarium could capture. Plaintiffs have made no specific allegations of harm with respect to this permit modification, but presumably would argue that, like the practice of permit modification in general, it results in the reduction of wild dolphins.

permitted and do not increase the number of dolphins to be taken from the wild, have caused or will cause a reduction in wild dolphins. Similarly, they have provided no evidence of the effects of the beached and stranded marine mammal practice. Common sense, however, indicates that it is the beaching or stranding, not the rescue, of marine mammals that may cause a reduction in the number of wild marine mammals. Absent any evidence showing a causal connection, plaintiffs cannot survive defendants' motion for summary judgment on the basis that they have suffered harm due to the depletion of the dolphin population.

With respect to the transportation of dolphins, plaintiffs allege that dolphins may be injured or die when transported, and that the injured or dead dolphins will then be replaced by wild dolphins, resulting in fewer dolphins in the wild. While the plaintiffs have provided evidence that some marine mammals have been injured or have died during transport, they assert that they need discovery in order to determine how many marine mammal deaths from transportation have been reported to Commerce. *See* Affidavit of Scott Van Valkenburg ("Van Valkenburg Aff.") at Exhibits 9–10, Exhibit V to Plaintiff's Memorandum in Support of its Opposition; Plaintiffs' Memorandum in Opposition at 14–15. The single specific transfer which plaintiffs protest, however, the transfer of Kama, did not result in any injury.

Even if plaintiffs could prove that dolphins are frequently injured during transport, this alone would not establish the required causal connection between plaintiffs' harm and agency action. Plaintiffs allegation of injury is that as observers of dolphins, they are harmed by the removal of dolphins from the wild. In order to establish standing, they must show that the reduction in the number of wild dolphins is "fairly traceable" to Commerce's failure to require permits for transporting dolphins. *Lujan v. DOW*, —— U.S. at ——, 112 S.Ct. at 2136. Plaintiffs have, however, failed to offer evidence that the harm alleged is sufficiently linked to the agency violation. Actual reduction in the number of wild dolphins is not dependent on the actions of the agency, but on the actions of third parties who may seek to replace those dolphins that are injured or killed in transport. As noted earlier, the Court explained in *Lujan v. DOW* that:

> [When] the existence of one or more of the essential elements of standing "depends on the unfettered choices of independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," ... it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

*Id.* at ——, 112 S.Ct. at 2137.

Even if plaintiffs satisfy this burden by showing that owners of dolphins actually do seek to replace dolphins injured or killed in transport, plaintiffs already have an adequate opportunity to cure the harm alleged as a result of the current practice. If dolphins are injured or killed in transport and their owners seek to replace them, the owners must obtain permits to remove the replacement dolphins from the wild. During this permit process, plaintiffs will have the opportunity to present their case to Commerce, and to seek judicial review of any permits granted.

Plaintiffs' alleged injury on the basis of the depletion of the number of dolphins stems from the general policy allowing transportation of dolphins without a permit. Such generalized challenges, absent specific injury, are "rarely if ever appropriate for federal-court adjudication." *Allen v. Wright*, 468 U.S. at 760, 104 S.Ct. at 3329. The Supreme Court has held that challenges to an agency regulation are not appropriate for review "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. NWF*, 497 U.S. at 891, 110 S.Ct. at 3190. The Court further explained:

> [I]t is ... entirely certain that the flaws in the entire "program"—consisting principally of the many individual actions refer-

enced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA, simply because one of them that is ripe for review adversely affects one of respondent's members.

*Id.* at 892–93, 110 S.Ct. at 3191.

With respect to the transfer practice, plaintiffs oppose 316 individual actions—Letters of Agreement issued in lieu of permits for transfers of marine mammals—but essentially challenge the practice in general. They have not alleged any specific facts with regard to any transfer except Kama's. If plaintiffs' had established standing with respect to Kama's transfer, the court could address the propriety of the practice of issuing Letters of Agreement as it affected Kama's situation. The court understands that it should not, however, address the practice in general, especially when plaintiffs cannot establish standing as to any one agency action. Similarly, plaintiffs challenge the "over 350" permit modifications, including one specific modification, but fail to offer evidence of any harm the modifications have actually caused. Finally, they offer no evidence of any particular agency action, or any harm such actions might cause, with respect to their challenge to Commerce's practice of issuing Letters of Agreement for persons who rescue beached and stranded marine mammals. Thus, a reasonable ·factfinder would not conclude that plaintiffs have suffered harm concerning the depletion of wild dolphins which gives them standing to maintain this action.

   (c) *Plaintiffs' allegations of procedural harm are insufficient for purposes of standing.*

   █ Plaintiffs allege that they have suffered and will suffer procedural harm as a result of Commerce's practices. In essence, they contend that Commerce's practices of issuing Letters of Agreement for transfers and for beached or stranded marine mammals, of modifying permits without public notice or opportunity to comment, and of failing to prepare environmental impact statements, deny plaintiffs—both the individual members and the organizations themselves—the opportunity to participate in the public proceedings that would otherwise occur.

In *Lujan v. DOW,* plaintiffs claimed that they had been deprived of their right to bring a citizen suit to allege a violation of the Endangered Species Act even though they could not show that they had suffered any concrete harm from the violation itself. —— U.S. at —— – ——, 112 S.Ct. at 2142–46. The Court found that the citizen-suit provision, available to the public at large, could not alone provide a basis for standing. The Court reasoned, quoting from *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), that when the procedural right is available to all members of the public, and the plaintiffs cannot show any injury apart from that suffered by the public at large, plaintiffs do not have standing. *Id.,* —— U.S. at —— – ——, 112 S.Ct. at 2143–44. The Court concluded that procedural harm could be a basis for standing only upon a showing that the "disregard of [a procedural requirement] could impair a separate concrete interest of [plaintiffs]." —— U.S. at ——, 112 S.Ct. at 2142 (explaining that a person living next door to the construction site of a federal facility can enforce the procedural requirement that an environmental impact statement be prepared).

Just prior to the decision in *Lujan v. DOW,* the Court of Appeals for the First Circuit also addressed the issue of procedural harm, rejecting National Wildlife Federation's ("NWF") motion to intervene in a suit between the United States government and AVX Corporation concerning the clean up of the New Bedford Harbor. *United States v. AVX Corp.,* 962 F.2d 108 (1992). NWF alleged that it suffered procedural harm because the government and AVX entered into a consent decree which deprived NWF of the ability to comment, in violation of CERCLA. The court found that NWF and its members had failed to establish actual injury apart from the procedural harm. The court held, therefore, NWF did not have standing to intervene, explaining:

> Here, the actual injury, if there is any, can only stem from the potential for an inadequate cleanup of the Harbor area rather

than from an alleged impairment of the citizenry's right to comment. It follows ineluctably that, in order for standing to arise out of procedural harm, NWF must show that its members have suffered, or are in imminent danger of, some distinct and palpable injury flowing from the possibility of an inadequate clean up. *Id.* at 119.

In the present case, plaintiffs allege that they have been denied their rights to notice, to comment, to request a hearing, and to seek judicial review of the grant of permits, all in violation of the MMPA. However, these rights are not particular to plaintiffs, but are granted to any member of the public. 16 U.S.C. § 1374(d). Since plaintiffs other allegations of harm are insufficient, there is no "distinct and palpable" injury that they will suffer as a result of their inability to participate in the permit process. Without more, the allegations of procedural harm do not suffice to provide plaintiffs with standing.

2. *Plaintiffs' do not have standing as organizations*

■ Plaintiffs' allege that they have standing, apart from the standing of their members, to sue for injuries to the organizations themselves. It is true that an organization may have standing to sue if a defendant's actions injure the organization itself. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 & n. 19, 102 S.Ct. 1114, 1124 & n. 19 (1982) (citing *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975)). Such injuries typically impair an organization's ability to achieve its corporate purpose. *Id.*

■ Plaintiff organizations allege procedural and informational harm. *See* Close Aff. at ¶ 6; Affidavit of Mitchell Fox ("Fox Aff.") at ¶ 7, Exhibit F to Plaintiff's Memorandum in Support of its Opposition; Affidavit of Joyce Tischler ("Tischler Aff.") at ¶ 7, Exhibit T to Plaintiff's Memorandum in Support of its Opposition. More specifically, they allege that Commerce's practice of: (1) refusing to require permits in order to transfer, sell or purchase dolphins; and (2) modifying permits without public notice, render the organizations unable to participate in

public affairs concerning activities affecting the marine mammal population or to disseminate information about such activities to their members. They specifically note that the transfer of Kama involved a transfer made without a permit. *Id.*

The plaintiffs' memoranda interweave their arguments concerning procedural and informational harm. This interweaving is easily understandable because the strongest argument which can be made concerning informational harm is that the improper failure of the government to disseminate information injures the ability of organizations and their members to participate in the political process to promote public policies they prefer. Adequate information about government activity is important to the exercise of fundamental political rights, including the rights to vote, to speak and write in an effort to influence the votes of others, and to lobby Congress and the President. In this sense, informational rights are instrumental to the exercise of procedural rights; the two rights are integrally related.

As described earlier, however, the Supreme Court and the Court of Appeals for the First Circuit have recently clarified that procedural harm alone is insufficient to confer standing. *See Lujan v. DOW,* — U.S. at — – —, 112 S.Ct. at 2142–46; *United States v. AVX,* 962 F.2d at 119. Because informational harm is so intimately linked with procedural harm, this court believes that it necessarily follows that informational harm alone is insufficient to establish standing.

This view is consistent with the evolution of the caselaw in the Court of Appeals for the District of Columbia Circuit, the most active court in this area of the law. Prior to 1991, the Court of Appeals for the District of Columbia had held that informational harm could satisfy the injury prong of the test for standing in certain circumstances. *See Competitive Enterprise Institute v. National Highway Traffic Safety Administration,* 901 F.2d 107, 122 (D.C.Cir.1990); *City of Los Angeles v. National Highway Traffic Safety Administration,* 912 F.2d 478, 492 (D.C.Cir. 1990); *National Wildlife Federation v. Ho-*

*del,* 839 F.2d 694, 712 (D.C.Cir.1988). In *Competitive Enterprise Institute,* the court stated:

> Allegations of injury to an organization's ability to disseminate information may be deemed sufficiently particular for standing purposes where that information is essential to the injured organization's activities, and where lack of the information will render those activities infeasible.... To establish standing on this basis, however, petitioners must assert a plausible link between the agency's action, the information-

901 F.2d at 122. The court concluded that the plaintiff organization did not have standing because the injuries alleged were not in the "zone of interests to be protected or regulated" by the statute at issue. *Id.* at 123–24.

If the test stated in *Competitive Enterprise Institute* were applicable, the plaintiff organizations would evidently be entitled to a trial on the question of whether they have standing on the basis of informational injury. Each of the organizations avers that it uses information about marine mammals to inform its membership and to educate itself, all in an effort to pursue its corporate purpose of promoting the well-being of animals. *See* Close Aff. at ¶¶ 2–6; Fox Aff. at ¶¶ 2–6; Tischler Aff. at ¶¶ 2–7. They also assert that the failure of Commerce to publicize information about its actions regarding transfers of dolphins and modifications of permits renders the organizations incapable of disseminating such information to their members in an effort to promote animal welfare.

In *Foundation on Economic Trends v. Lyng,* 943 F.2d 79 (D.C.Cir.1991), however, the Court of Appeals for the District of Columbia more recently revisited the issue of informational standing. In *Lyng,* plaintiffs, a public interest biotechnology group, sued the Department of Agriculture for the failure to prepare an environmental impact statement ("EIS") for its "germplasm protection program" in violation of NEPA. Plaintiffs alleged injury as a result of its inability to disseminate the information an EIS would contain.

Although the court found that plaintiffs did not have standing for another reason—the failure to identify a particular agency action—the court reviewed the development of the doctrine of informational harm, noting that it could not find any cases in which standing had been found *solely* based on informational harm. *Id.* at 83–85. The court warned against an expansive view of informational injury particularly where statutes such as NEPA, which provide for the preparation of public information, were involved. The court noted:

> "informational injury," in its broadest sense, exists day in and day out, whenever federal agencies are not creating information a member of the public would like to have. If such injury alone were sufficient, a prospective plaintiff could bestow standing upon itself in every case merely by requesting the agency to prepare the detailed statement NEPA contemplates, which in turn would prompt the agency to engage in "agency action" by failing to honor the request.

*Id.* at 85. The court further observed that the broad approach to standing based on informational harm runs contrary to the language in *Sierra Club v. Morton,* "that 'a mere interest in a problem, no matter how long-standing the interest and no matter how qualified the organization is in evaluating the problem,' is not sufficient to confer standing." *Id.* at 85 (quoting *Sierra Club,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972)).

The decision in *Lyng* speaks persuasively to this case. Having found the evidence supporting plaintiffs' other claims of injury insufficient, this court must find the evidence is adequate to establish standing on the basis of informational injury alone, or not at all. While *Lyng* focussed on NEPA, which provides for the dissemination of information concerning the environmental impact of an agency action, its reasoning is also applicable to the MMPA, a statute that explicitly provides for public notice before a permit is issued. In this case, plaintiffs' desire for information cannot be said to evidence more than the organizations' and their members' "long-standing.... interest" in the issue of

animal welfare. *Sierra Club,* 405 U.S. at 739, 92 S.Ct. at 1368.

The court in *Lyng* also warned against a broad interpretation of informational standing because such an interpretation would open the court's doors to any plaintiff who wished to contest the government's failure to publicize information under NEPA.[6] The court observed:

> It is not apparent why an organization's desire for information about the same environmental problem should rest on a different footing. We also have trouble seeing how 'informational standing' could be confined to organizations. If one of NEPA's purposes is to provide information to the public, any member of the public—anywhere—would seem entitled to receive it.

943 F.2d at 85 (noting that in *United States v. Richardson,* 418 U.S. 166, 176–80, 94 S.Ct. 2940, 2946–48, 41 L.Ed.2d 678 (1974), the Court "rejected a similar claim of informational standing on the ground that the effect on the plaintiff from the lack of information was undifferentiated and common to all members of the public.").

Similarly, under the MMPA, the permit process requires public notice. If informational harm alone were sufficient to confer standing, any individual or appropriate organization could obtain standing to challenge any action taken by Commerce pursuant to the MMPA simply by asserting that such action required the use of the permit process.

The Supreme Court's subsequent decision in *Lujan v. DOW* implicitly confirms that the Court of Appeals in *Lyng* correctly analyzed the question of standing based upon informational harm alone. In *Lujan v. DOW,* the Court reemphasized the requirement of "concrete and particularized harm." —— U.S. at ——, 112 S.Ct. at 2136. The concept of standing based only on informational harm is inconsistent with this requirement. Similarly, in *Lujan v. DOW,* the Court reiterated that it is "substantially more difficult" for a plaintiff to establish standing when he is not himself the object of the government action or inaction he seeks to challenge. —— U.S.

at ——, 112 S.Ct. at 2137. This principle would be substantially undermined if informational harm alone were deemed sufficient to confer standing.

Accordingly, this court concludes that where, as here, there is insufficient evidence of any other "concrete and particularized injury" to confer, or contribute to, a finding of standing, evidence of informational harm alone is inadequate to defeat a motion for summary judgment based on lack of standing.

## IV. OTHER MOTIONS

After defendants filed their motions for summary judgment, plaintiffs moved to amend their complaint, seeking to add several counts regarding the transfer of Rainbow, another dolphin that was transferred from the Aquarium without a permit. The plaintiffs had filed a case in 1990 concerning the transfer of Rainbow, which was settled prior to the Kama litigation. *Rainbow v. New England Aquarium,* C.A. No. 90–12207–WF. Plaintiffs claim that if the motion to amend is allowed, their standing in this case will be established. However, as the defendants had filed and briefed their meritorious motions for summary judgment before the motion to amend was filed, it would be unfair to allow that motion and thus reward an evident effort to avoid an adverse ruling on the request for summary judgment. *See Kennedy v. Josephthal & Co.,* 814 F.2d 798, 806 (1st Cir.1987).

More importantly, the claim that plaintiffs now wish to pursue as part of this case concerns the defendants' alleged breach of the settlement agreement concerning Rainbow. This issue is unique to the Rainbow case. It would not be fair or efficient to allow this issue to serve as a device to perpetuate the much broader claims in this case that plaintiffs otherwise lack standing to litigate. Accordingly, plaintiffs' motion to amend their complaint will be denied.

In addition, defendants have filed counterclaims alleging abuse of process and defama-

---

**6.** The court noted that the fact that plaintiff had to show that the injury alleged was related to environmental concerns did not provide a significant barrier to establishing standing. *See* 943 F.2d at 84.

tion. Both of these counterclaims are premised on state law. As all of the federal claims in this case are being dismissed and there are no exceptional circumstances to warrant retention of jurisdiction by this court of the counterclaims, they will be dismissed without prejudice to being reinstituted in the courts of the Commonwealth of Massachusetts. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## V. *CONCLUSION*

Defendants' motion for summary judgment must be granted because the plaintiffs have not introduced sufficient evidence to permit a reasonable factfinder to conclude they have standing to maintain this suit. It should be noted, however, that this ruling does not preclude the plaintiffs from seeking to achieve the public policies they advocate, and believe are already required by the MMPA, by other means. For example, in order to obtain the information they seek about transfers without permits and other matters, plaintiffs may make periodic requests under the Freedom of Information Act, and may appeal any denial of such requests to the courts. Following this procedure would address their present claims concerning informational harm. Plaintiffs may also participate in the political process, seeking to amend either the MMPA or Commerce's regulations interpreting it. Indeed, proposed new MMPA regulations were published on October 14, 1993, for public comment. Finally, plaintiffs may litigate the MMPA issues presented in this case if they can establish the particularized harm necessary to establish standing with regard to another dolphin transfer.

As the Supreme Court has recently reemphasized, in our constitutional democracy courts are empowered to adjudicate only true "Cases" and "Controversies." *Lujan v. DOW,* — U.S. at —, 112 S.Ct. at 2136. The standing requirements relate directly to this constitutional limitation on the power of the courts.

In this case, viewing the facts in the light most favorable to the plaintiffs, a reasonable factfinder could not find that plaintiffs have suffered, or will suffer, the type harm required to establish standing. In the absence of adequate evidence that any plaintiff has been harmed by Commerce's actions, this court may not address the legality of those actions, for there is no true "Case" or "Controversy."

Accordingly, it is hereby ORDERED that:

1. Defendants' motions for summary judgment on the ground of plaintiffs' lack of standing is ALLOWED.

2. Defendants' motion to remove Kama's name from the caption of this case is ALLOWED.

3. Plaintiffs' motion to amend their complaint is DENIED.

4. Defendants' counterclaims are dismissed without prejudice to being reinstituted in the courts of the Commonwealth of Massachusetts.