915 F.2d 1242
 Clinton W. LOVE, Sr., and Rose Mary Love, husband and wife,
Plaintiffs-Appellants,
v.
UNITED STATES of America, United States Department of
Agriculture, Farmers Home Administration, Philip A. Young,
Claude Hargrove, Arthur E. Lund, Theodore Hebnes, Roger
Meredith, Rodger Vanvalkenburg, Dale Gilbert, Jim Walker,
Stanley Faught, and Gilbert L. Anderson, Defendants-Appellees.
 No. 87-3832.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1988.
Decided April 6, 1989.
Amended Opinion Oct. 5, 1990.
 
 Robert M. Kampfer, Gene A. Picotte, P.C., Clancy, Mont., for plaintiffs-appellants.
 Robert J. Brooks, Asst. U.S. Atty., Great Falls, Mont., for defendants-appellees.
 Appeal from the United States District Court for the District of Montana.
 Before FLETCHER and NELSON,* Circuit Judges, and CARROLL,** District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Clinton W. and Rose Mary Love appeal the dismissal of their complaint against the United States and certain federal officials arising out of the government's liquidation of the Loves' livestock and farm equipment. We reverse.
 
 BACKGROUND
 
 2
 The Loves are Montana farmers who obtained agricultural loans from the Farmers Home Administration ("FmHA"), under the consolidated Farm and Rural Development Act ("CFRDA"), 7 U.S.C. Secs. 1921 et seq. (1982). The loans purportedly were secured by a chattel mortgage on the Loves' livestock and machinery. In 1984, the Loves defaulted on these loans and went into bankruptcy, allegedly due to conditions beyond their control. The individual defendants in this action, officials of FmHA, obtained a release of the stay of proceedings from the U.S. Bankruptcy Court, took possession of the secured property, and sold it. The Loves allege that the livestock and machinery were critical to their farming operation, which failed without it.
 
 
 3
 The Loves apparently are members of a nationwide class certified by the district court in Coleman v. Block, 580 F.Supp. 192 (D.N.D.1984). The class comprises:
 
 
 4
 all persons who have obtained a farmer program loan from the Farmers Home Administration, and who are or may be eligible to obtain a farmer program loan from the Farmers Home Administration, and whose loans are or will be administered in the Farmers Home Administration offices located throughout the United States ...
 
 
 5
 580 F.Supp. at 192. The Coleman court, interpreting 7 U.S.C. Sec. 1981a, issued a preliminary injunction against the Secretary of Agriculture and FmHA, prohibiting them from liquidating farm property without providing the debtor farmer notice and the opportunity for a hearing. At the hearing, the farmer would be afforded the opportunity to establish his eligibility for loan deferral if he could show that his loan default was a result of circumstances beyond his control.
 
 
 6
 The Loves allege (1) that they are members of this class and that their insolvency resulted from circumstances beyond their control, making them eligible for loan deferral; (2) that defendants possessed and sold off the Loves' property without any notice or hearing as required by the Coleman injunction. The Loves also allege that their security agreement with the government failed to reference their livestock and machinery as collateral, so that the government never had a valid security interest in the property.
 
 
 7
 The Loves filed a pro se complaint, which was amended after they obtained counsel. It alleges claims against the government under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 2671-80 (1982), and against the individual defendants under the Constitution. The district court dismissed the action in its entirety for lack of subject matter jurisdiction and for failure to state a claim.
 
 DISCUSSION
 
 8
 We review de novo the dismissal of a complaint for failure to allege subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) or failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 549 (9th Cir.1984) (failure to allege subject matter jurisdiction); Western Reserve Oil and Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985) (failure to state a claim). Our review is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Western Reserve, 765 F.2d at 1430. Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir.1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)).
 
 I. FTCA Claims
 A. Conversion
 
 9
 The district court found that the Loves' claim for conversion was premised on a breach of contract, and was therefore not cognizable under the FTCA. Instead, the court ruled, such a claim must be brought before the Court of Claims under the Tucker Act, 28 U.S.C. Secs. 1346(a)(2), 1491.
 
 
 10
 The district court relied on our decision in Woodbury v. United States, 313 F.2d 291 (9th Cir.1963). There, Woodbury, a real estate developer, brought suit against the government when the Federal Housing Administration allegedly breached a promise to arrange for long-term financing of a government housing construction contract. Woodbury had undertaken the project, and incurred financial and contractual obligations, allegedly in reliance on the government's promise. Although Woodbury expressed his claim as the tort of breach of fiduciary duty and sued under the FTCA, we held that the claim was really for breach of contract:
 
 
 11
 Many breaches of contract can also be treated as torts. But in cases such as this, where the "tort" complained of is based entirely upon a breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to "waive the breach and sue in tort" brings the case within the Federal Tort Claims Act.
 
 
 12
 Id. at 295. Instead, the contract claim could only have been brought under the Tucker Act, which confers on the Court of Claims exclusive jurisdiction over contract claims in excess of $10,000 against the government. Id.[1] According to defendants and the district court, the Loves' claim for conversion is essentially a breach of contract and must therefore be dismissed under Woodbury. We disagree.
 
 
 13
 Under the FTCA, the federal government assumes liability for wrongs that would be actionable in tort if committed by a private party under analogous circumstances, under the law of the state where the act or omission occurred. 28 U.S.C. Sec. 2674; LaBarge v. Mariposa County, 798 F.2d 364, 366 (9th Cir.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987). Under Montana law, statutory requirements governing disposal of secured property by the mortgagee or lienholder, including the requirement of notice to the debtor, must be followed strictly. Goggins v. Bookout, 141 Mont. 449, 378 P.2d 212, 214 (1963). Where the mortgagee or lienholder disposes of the property without complying with statutory requirements, "he is guilty of a conversion." Id. (quoting Trudell v. Hingham State Bank, 62 Mont. 557, 205 P. 667, 669 (1922)). Montana requires that the secured party give notice to the debtor before disposing of collateral, Mont.Code Ann. Sec. 30-9-504(3)(a) (1987), and provides that the debtor may sue the secured party for any damages resulting from the secured party's failure to comply with such requirement. Id. Sec. 30-9-507(1). Here, the defendants disposed of the Loves' collateral without the required statutory notice under 7 U.S.C. Sec. 1981a (as interpreted by Coleman v. Block, supra ). Thus, the government's alleged action, if taken by a private party under Montana law, would give rise to a cause of action for conversion.[2]
 
 
 14
 The district court and defendants, relying on Woodbury, appear to assume that the Loves' conversion claim sounds in contract rather than tort because the Loves' security agreement with the government must be considered in deciding whether the government's possession of the property was wrongful. This reliance on Woodbury is misplaced. In Woodbury, we dealt with a breach of contract claim that could be characterized as a tort "only incidentally and conceptually." Id. at 295. But we also recognized that some wrongs could sound both in tort and contract:
 
 
 15
 We do not mean that no action will ever lie against the United States under the Tort Claims Act if a suit could be maintained for a breach of contract based upon the same facts. We only hold that where, as in this case, the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.
 
 
 16
 Id. at 296. Here, the Loves' allegations could have been brought as a breach of contract claim, but they equally support a tort claim for conversion. Although a breach of promise may be involved, the government's liability does not "depend[ ] wholly upon the government's alleged promise," because liability depends in large part on the Loves' claim of ownership and possession of the property.
 
 
 17
 This case resembles the facts in Aleutco Corp. v. United States, 244 F.2d 674 (3rd Cir.1957), more than those in Woodbury. In Aleutco, the plaintiff purchased $868,000 of surplus war goods in Alaska. When the Navy refused to let the plaintiff take possession of some of the goods, the plaintiff brought an FTCA suit for conversion. The court held that the plaintiff had sufficiently stated "a cause in tort for conversion" even though it "could have equally well made out a complaint for breach of contract." Id. at 678-79. "The fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into one in contract." Id. at 678.
 
 
 18
 Our circuit has approved this principle from Aleutco. First, in Woodbury itself, we recognized that "in Aleutco the action was essentially one sounding in tort." 313 F.2d at 296. In Walsh v. United States, 672 F.2d 746 (9th Cir.1982), the plaintiff, who had conveyed a highway easement to the government, lost livestock because the government contractor negligently failed to maintain cattle guards on the highway. We again approved Aleutco and distinguished Woodbury, holding that the plaintiff's claim sounded essentially in tort, even though the government's duty to maintain the highway could have been based on the terms of the conveyance. Id. at 749-51.
 
 
 19
 We considered this issue most recently in Fort Vancouver Plywood Co. v. United States, 747 F.2d 547 (9th Cir.1984). There, a supply of timber purchased by the plaintiff from the government was destroyed when a U.S. Forest Service "slash burn" operation burned out of control. The plaintiff brought an FTCA action claiming negligence by the Forest Service. The district court dismissed the claim for lack of subject matter jurisdiction, holding that the plaintiff's claim was based on its contract for purchase of the timber. We reversed. Noting that the contract was not the sole basis for liability, as had been the case in Woodbury, we relied on Aleutco to hold that the contract "was relevant only insofar as it established [the plaintiff's] right to the property, an element of the tort alleged." 747 F.2d at 551-52.
 
 
 20
 Here, as in Fort Vancouver, the plaintiffs' contract with the government establishes only an underlying element of the tort, specifically the mortgagor-mortgagee relationship between the Loves and the government. We conclude that the Loves' complaint alleges facts sufficient to prove conversion and that the district court has subject matter jurisdiction under the FTCA to consider the claim.
 
 B. Other FTCA claims
 
 21
 The Loves' first amended complaint also alleges claims under the FTCA for breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, and negligent performance of an undertaking to render services.[3]
 
 
 22
 According to the Loves, the government breached a duty owed them by virtue of the government's relationship to the Loves as a lender. At first blush, this claim appears to be foreclosed by Woodbury, which held that a claim for breach of fiduciary duty arising from a financing agreement was essentially a breach of contract claim, cognizable only under the Tucker Act. 313 F.2d at 294-95. However, in Woodbury, the purported "fiduciary" relationship arose strictly out of the contract and appeared to be nothing more than a means of recasting a breach of contract claim in tort terms. "Good faith" was implicated only in that the promise allegedly breached was not explicit in the agreement, but had to be implied by construing the contract in light of the parties' good faith obligations. Id. at 294. We stated that "the 'tort' complained of is based entirely upon a breach by the government of a promise made by it in a contract." 313 F.2d at 295 (emphasis added).
 
 
 23
 Here, the situation is somewhat different. The Loves allege, in addition to breach of fiduciary duty, that the government breached an "implied covenant of good faith and fair dealing," which Montana recognizes as a separate cause of action in tort. E.g., Nicholson v. United Pacific Ins. Co., 219 Mont. 32, 710 P.2d 1342, 1348 (1985); First Nat'l Bank in Libby v. Twombly, 213 Mont. 66, 689 P.2d 1226, 1230 (1984). Although this duty arises between parties having a contractual relationship, "the duty exists apart from, and in addition to, any terms agreed to by the parties.... The duty is imposed by operation of law and therefore its breach should find a remedy in tort." Gates v. Life of Montana Ins. Co., 205 Mont. 304, 668 P.2d 213, 214-15 (1983). Montana courts imply this duty of good faith where contractual relations are characterized by adhesion or inequality in bargaining power. Nicholson v. United Pacific Ins. Co., 710 P.2d at 1347. Banks owe such a duty to their customers. Tribby v. Northwestern Bank of Great Falls, 217 Mont. 196, 704 P.2d 409 (1985). Not only is the duty selectively implied, but its breach requires "some impermissible activity" beyond the mere existence of a breach of contract:
 
 
 24
 Historically, a party to a contract generally had the right to breach and pay damages rather than perform.... But whether performing or breaching, each party has a justifiable expectation that the other will act as a reasonable person. The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. When one party acts arbitrarily, capriciously or unreasonably, that conduct exceeds the justifiable expectations of the second party. The second party then should be compensated for damages resulting from the other's culpable conduct.
 
 
 25
 Nicholson v. United Pacific Ins. Co., 710 P.2d at 1348. In sum, the breach of the duty of good faith alleged here, as interpreted by the Montana courts, is a separate tort and is not, as was the case in Woodbury, "based entirely upon breach by the government of a promise made by it in a contract." 313 F.2d at 295 (emphasis added).
 
 
 26
 We conclude that breach of the duty of good faith is a tort properly brought under the FTCA. Our conclusion is bolstered by the apparent fact that the breach of this duty may not be cognizable under the Tucker Act. The Court of Claims has jurisdiction over claims for money damages in excess of $10,000 "in cases not sounding in tort." 28 U.S.C. Secs. 1346(a)(2), 1491(a)(1). To the extent that this breach sounds in tort, it is expressly excluded by Sec. 1491. But see Travelers Indemnity Co. v. United States, 16 Cl.Ct. 142 (1988). Moreover, the Federal Circuit has suggested that the FmHA's alleged failure to follow federal regulations in providing loan servicing relief is a tort rather than a contract claim. Smithson v. United States, 847 F.2d 791, 794 (Fed.Cir.1988).
 
 
 27
 Montana also recognizes the "good samaritan" doctrine of negligence, Jeffries v. United States, 477 F.2d 52, 56 (9th Cir.1973), which imposes liability for negligent performance of an undertaking "to render services to another which [the tortfeasor] should recognize as necessary for the protection of the other's person or things." Restatement (Second) of Torts Sec. 323. The Loves claim that the government breached this duty in providing loan services without due care, in failing to give the required notice. Although this claim has contractual implications, it also sounds in tort, and comes within FTCA jurisdiction.
 
 
 28
 The district court, however, rightfully dismissed this portion of the claim. "Good samaritan" cases have typically arisen where the negligently performed service is related to safety. See, e.g., United Scottish Ins. Co. v. United States, 614 F.2d 188 (9th Cir.1979), rev'd on other grounds sub nom. United States v. Varig Airlines, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (allegedly negligent airplane safety inspection); Jeffries v. United States, 477 F.2d 52 (9th Cir.1973) (allegedly negligent mine safety inspection); Restatement (Second) of Torts, Sec. 323 (tortfeasor "is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care") (emphasis added). The Loves claim is for economic harm arising out of an alleged abuse of a contractual relationship. Physical safety was not implicated.
 
 II. Bivens Claim
 
 29
 The district court dismissed the Loves' claim against the individual FmHA officials on the ground that the alleged breach of the statutory notice requirement could not constitute a tort unless the breach of duty came within the FTCA. Because the FTCA does not provide for liability of individual officials, the district court concluded, no relief is available against the individual defendants.
 
 
 30
 This conclusion is mistaken. As the district court itself recognized, the Loves' allegation of the defendants' failure to comply with the notice and hearing requirements of 7 U.S.C. Sec. 1981a and the Coleman injunction constitutes a claim for denial of due process of law. The Loves' claim that the individual defendants deprived them of property without due process states a valid claim for damages under the Constitution. Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471-72, 64 L.Ed.2d 15 (1980); Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Merritt v. Mackey, 827 F.2d 1368, 1371 & n. 2 (9th Cir.1987). The Loves are entitled to plead the Bivens claim along with the FTCA claim as an alternative basis for recovery. See Arevalo v. Woods, 811 F.2d 487, 490 (9th Cir.1987).
 
 
 31
 The defendants argue that the Loves fail to allege an independent basis for federal jurisdiction over the Bivens claim. The defendants point out that the jurisdictional statement in the Loves' complaint mentions only the FTCA as the basis for jurisdiction, and that Bivens claim cannot be brought under the FTCA. This jurisdictional argument is meritless. We have consistently held that no jurisdiction-conferring provision need be specifically pleaded, as long as the complaint sets forth facts giving the court jurisdiction. Aguirre v. Automotive Teamsters, 633 F.2d 168, 174 (9th Cir.1980). Such is the case here. The Loves' complaint alleges facts showing a violation of due process by the individual defendants and expressly states that due process was violated. The district court has subject matter jurisdiction to hear that claim pursuant to 28 U.S.C. Sec. 1331.
 
 
 32
 REVERSED and REMANDED.
 
 
 33
 CARROLL, District Judge, dissenting in part and concurring in part:
 
 
 34
 I respectfully dissent with respect to the holding of the amended opinion that the Loves' amended complaint states a tort claim against the United States. For the original opinion see Love v. United States, 871 F.2d 1488 (9th Cir.1989).
 
 
 35
 The basic issue confronting this Court is the nature of the claim(s), if any, of persons who obtained emergency farm loans from the Farmers Home Administration (FmHA) and thereafter were not advised by the FmHA personnel of their opportunity under 7 U.S.C. Sec. 1981a to seek deferral--prior to foreclosure--of loan payments in instances of temporary inability to pay due to circumstances beyond their control.
 
 
 36
 Section 1981a and rights of borrowers under that program, have been addressed by a number of federal courts. This is one of the two cases, the other is LaPlant v. United States, 872 F.2d 881 (9th Cir.1989), where a court specifically discussed whether the failure of FmHA to advise borrowers that they had the opportunity to request a loan deferral gives rise to a contract or tort claim against the United States.[1]
 
 
 37
 The issue of contract versus tort as a practical matter cannot be dictated by the manner in which plaintiffs draft their complaint. United States v. Neustadt, 366 U.S. 696, 705, 81 S.Ct. 1294, 1299, 6 L.Ed.2d 614 (1961); Art Metal-USA, Inc. v. United States, 753 F.2d 1151 (D.C.Cir.1985). Otherwise district courts would be inundated with Federal Tort claims and the Court of Claims would become a court of little resort.
 
 
 38
 In deciding whether an action is one in contract or tort, the nature of the claim against the United States must be determined. Aleutco Corporation v. United States, 244 F.2d 674, 679 (3rd Cir.1957).
 
 
 39
 The claim that the Loves assert is not a "classic tort," i.e., "a private or civil wrong or injury, other than a breach of contract, for which the Court will provide remedy in the form of an action for damages." Black's Law Dictionary, Fifth Edition.[2]
 
 
 40
 The claim here, despite the Majority's Amended Opinion to the contrary, does not evolve from some implied promise arising out of a contractual relationship. The genesis of plaintiffs' claim is that governmental agents failed to advise them of a specific right guaranteed them by statute (Sec. 1981a) and incorporated by law as a part of their FmHA loan agreement. In Re LaFortune, 652 F.2d 842, 846 (9th Cir.1981), citing Home Building & Loan Assoc. v. Blaisdell, 290 U.S. 398, 429, 54 S.Ct. 231, 236, 78 L.Ed. 413 (1974).
 
 
 41
 Plaintiffs' tort claim is based on a promise made to them by the government in a contract. The holding in Woodbury v. United States, 313 F.2d 291, 295 (9th Cir.1963) is decisive on this issue:
 
 
 42
 Many breaches of contract can also be treated as torts. But in cases such as this, where the 'tort' complained of is based entirely upon breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim, we do not think that the common law or local state law right to 'waive the breach and sue in tort' brings the case within the Federal Tort Claims Act. The notion of such a waiver of breach and suit in tort is a product of the history of English forms of action; it should not defeat the long established policy that government contracts are to be given a uniform interpretation and applications depending upon the vagaries of the laws of fifty different states.
 
 
 43
 The wisdom of the "established policy" articulated in Woodbury is self-evident with respect to claims relating to Sec. 1981a. As noted in Lathan v. Block, 627 F.Supp. 397, 399 (D.N.D.1986) "approximately 240,000 to 265,000 persons nationwide have mortgaged real estate to FmHA to secure FmHA farm program loans."[3] The need for uniform treatment under federal law is patently necessary under these circumstances. We should affirm on all but the Bivens claim.
 
 
 
 *
 Hon. Dorothy W. Nelson, United States Circuit Judge for the Ninth Circuit was drawn to replace Hon. J. Blaine Anderson who died after argument and submission of this case
 
 
 **
 Hon. Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 The district courts have concurrent jurisdiction with the Court of Claims over contract actions where the amount in controversy does not exceed $10,000. Id.; 28 U.S.C. Sec. 1346(a)(2)
 
 
 [2]
 The Loves also allege that the government had no security interest in their property, because the security agreement was defective on its face, in that it did not reference the property in question as collateral. This allegation, if proved, would also establish the tort of conversion
 The government also suggests that the defendants may be immune from liability because their actions were discretionary. Appellee's Br. at 17. Under the "discretionary function exception," sovereign immunity is not waived by the FTCA for injuries arising out of a governmental "discretionary function." 28 U.S.C. Sec. 2680(a) (1982); United States v. Varig Airlines, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984). Although the district court made no ruling on this issue, we may consider whether Sec. 2680(a) provides an alternate ground for affirmance as we may affirm the district court "on any ground fairly supported by the record." Lee v. United States, 809 F.2d 1406, 1408 (9th Cir.1987), cert. denied, 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). Because the statutory notice the government allegedly failed to give was mandatory under 7 U.S.C. Sec. 1981a as interpreted by Coleman v. Block, supra, the defendants' alleged conduct did not come within the discretionary function exception. See Starrett v. United States, 847 F.2d 539, 541 (9th Cir.1988).
 
 
 [3]
 Neither the Loves' complaint nor their argument on appeal set forth the basis for finding the government to be a fiduciary, except as that term is used in Woodbury, where it is a way of pleading a breach of the obligation of good faith. Good faith in this sense is a creature of contract law, codified in the Uniform Commercial Code, see, e.g., M.C.A. Sec. 30-1-203, and used to construe contracts as implying obligations not explicit in their language. This use of the term is not to be confused with the separate tort under Montana law of breach of the covenant of good faith and fair dealing. See Nicholson v. United Pacific Ins. Co., 219 Mont. 32, 710 P.2d 1342 (1985), and discussion infra
 
 
 [1]
 The Love panel and the LaPlant panel filed opinions that conflicted on the issue of whether an action against the FmHA for breach of good faith under Montana law sounds in tort or contract. The mandate in each case was stayed pending further order of court. Id., 872 F.2d at 889. The Love panel is the first to issue an amended opinion
 
 
 [2]
 It is far from clear that the facts of this case would, in any event, give rise to a tort claim under Montana state law. As stated by Judge Hatfield in Darko v. U.S. Dept. of Agriculture, Farmer's Home, 646 F.Supp. 223 (D.Mont.1986) "... the precise nature and extent of the obligation [implied duty of good faith] are not readily ascertainable under present Montana decisional law ..."
 Any attempt to draw settled principles from Montana cases is uncertain at best and involves decisions assessing punitive damages claims, traditional tort injuries and bad faith. The Montana Supreme Court continues to speak to this issue. See particularly O'Bagy v. First Interstate Bank, --- Mont. ----, 785 P.2d 190 (1990); Dunfee v. Baskin-Robbins, Inc., 221 Mont. 447, 720 P.2d 1148 (1986).
 The implications of the majority opinion can be far reaching, given states such as California where "a covenant of good faith and fair dealing is implied into every contract, commercial, insurance, employment or otherwise." Nicholson v. United Pacific Insurance Co., 219 Mont. 32, 710 P.2d 1342, 1347 (1985).
 Loves' conversion claim based on the form of the security agreement is foreclosed by an examination of the copy of the agreement which is attached to their amended complaint. The agreement complies in every respect with Montana Code Annotated Sec. 30-9-203(1) (1985) (Uniform Commercial Code). The unambiguous language in the agreement establishes that Loves' granted the United States a security interest in the described property. See In Re Amex-Protein Development Corporation, 504 F.2d 1056 (9th Cir.1974).
 
 
 [3]
 For a detailed history of this farm credit legislation, see Curry v. Block, 541 F.Supp. 506, 509-11 (D.S.D.1982)