**Frizell CLEGG, Plaintiff–Appellant,**

v.

**CULT AWARENESS NETWORK; Cult Awareness Network, Los Angeles Chapter; Cynthia Kisser; Priscilla Coates, Defendants–Appellees.**

No. 92–56066.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 31, 1994 *.

Decided March 9, 1994.

---

\* The panel unanimously finds this case suitable for disposition without oral argument. Fed.

R.App.P. 34(a), 9th Cir.R. 34–4.

Michael T. Stoller, Besbris, Hollis & Stoller, Los Angeles, California; and Randall A. Spencer, Bowles & Nixon, Hollywood, California, for the plaintiff-appellant.

Peter M. Schnirch and Denial A. Leipold, Hagenbaugh & Murphy, Orange, California, for the defendants-appellees.

Before: SNEED, THOMPSON and RYMER, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Frizell Clegg sued the Cult Awareness Network, alleging discrimination on the basis of race and religion in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (1988). This statute prohibits discrimination in places of public accommodation.[1] The district court concluded Cult

---

**1.** Title II, 42 U.S.C. § 2000a (1988), provides in part:

(a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin.

(b) Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation is supported by State action:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment;

(4) any establishment (A)(i) which is physically located within the premises of any estab-

Awareness was not a place of public accommodation within the meaning of the statute, and dismissed Clegg's federal civil rights claim with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6). The court also dismissed, without prejudice, Clegg's pendent state claim under the Unruh Civil Rights Act (Cal.Civ.Code § 51 et seq.).

In this appeal, Clegg challenges only the district court's dismissal of his federal claim. He does not challenge the propriety of the dismissal of that claim without leave to amend.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm. The allegations of Clegg's complaint do not tend to show that Cult Awareness is a place, establishment, lodging or facility open to the public, or that it is an organization which provides access to an otherwise public place, within the meaning of 42 U.S.C. § 2000a.

## FACTS

Clegg is an African–American and self-avowed member of the Church of Scientology. Cult Awareness is a national non-profit organization, providing both information to the public concerning cults and support to former cult members.

In his complaint, Clegg alleged that he sent a letter to the Los Angeles affiliate of Cult Awareness (Cult Awareness–L.A.), stating he was a Scientologist and wanted to become a member of Cult Awareness. His letter further stated if he did not receive a response within ten working days, he would consider his request for membership denied on the basis that he is a Scientologist.

Cult Awareness failed to respond to Clegg's letter. Clegg later telephoned the director of Cult Awareness–L.A., explaining he desired membership in the organization to discuss the link between racial bigotry and religious intolerance. Cult Awareness denied his request for membership. Clegg then filed his complaint in this action, and appeals from the district court's judgment of dismissal for failure to state a claim. Fed. R.Civ.P. 12(b)(6).

## STANDARD OF REVIEW

■ A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. *Oscar v. University Students Co-operative Ass'n,* 965 F.2d 783, 785 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992); *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

■ Review is limited to the contents of the complaint. *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992); *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1990). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Buckey,* 968 F.2d at 794; *Love,* 915 F.2d at 1245. A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Buckey,* 968 F.2d at 794; *Love,* 915 F.2d at 1245. However, the court is not required to accept legal

---

lishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

(c) The operations of an establishment affect commerce within the meaning of this subchapter if (1) it is one of the establishment described in paragraph (1) of subsection (b) of this section; (2) in the case of an establishment described in paragraph (2) of subsection (b) of this section, it serves or offers to serve interstate travelers or a substantial portion of the food which it serves, or gasoline or other products which it sells, has

moved in commerce; (3) in the case of an establishment described in paragraph (3) of subsection (b) of this section, it customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce.

. . . .

(e) The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment with the scope of subsection (b) of this section.

conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986); *United States ex rel. Chunie v. Ringrose,* 788 F.2d 638, 643 n. 2 (9th Cir.), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

## DISCUSSION

Title II explicitly covers places, establishments, lodgings and facilities open to the public at large. Fifteen examples of such "places of public accommodation" are offered within the text of the law: inns, hotels, motels, restaurants, cafeterias, lunch rooms, lunch counters, soda fountains, retail establishments, gas stations, movie houses, theaters, concert halls, sports arenas and stadiums. 42 U.S.C. § 2000a. Nowhere does the statute refer to membership organizations, or otherwise indicate congressional intent to regulate anything other than public facilities.

From the plain language of the statute, it is clear Congress' intent in enacting Title II was to provide a remedy only for discrimination occurring in facilities or establishments serving the public: to conclude otherwise would obfuscate the term "place" and render nugatory the examples Congress provides to illuminate the meaning of that term. *See Welsh v. Boy Scouts of Am.,* 993 F.2d 1267, 1269 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993); *see also Ardestani v. I.N.S.,* — U.S. ——, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) ("The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed.") (citation omitted); *Richards v. United States,* 369 U.S. 1,

9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) ("the legislative purpose is expressed by the ordinary meaning of the words used"). This interpretation is in full accord with *Daniel v. Paul,* 395 U.S. 298, 307–08, 89 S.Ct. 1697, 1702, 23 L.Ed.2d 318 (1969), in which the Supreme Court determined that the "overriding purpose of Title II was 'to [re]move the daily affront and humiliation involved in discriminatory denials of access to *facilities* ostensibly open to the general public.'" (quoting H.R.Rep. No. 914, 88th Cong., 1st Sess., 18) (emphasis added).[2]

■ *Organizations* fall under the purview of Title II when entry into a facility open to the public is dependant on membership in the organization governing the facility. *See, e.g., Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (membership share in corporation chartered to operate a community swimming pool governed by Title II); *Daniel v. Paul,* 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969) (Title II governs when membership fee exists to enter recreational facility containing boating, swimming, miniature golf, dancing facilities and snack bar); *Smith v. Young Men's Christian Ass'n of Montgomery, Inc.,* 462 F.2d 634 (5th Cir.1972) (YMCA membership governed by Title II); *Nesmith v. Young Men's Christian Ass'n of Raleigh, N.C.,* 397 F.2d 96 (4th Cir.1968).

To conclude, however, that Title II covers organizations having no affiliation with any public facility would be tantamount to finding that an organization is a "place." Such an interpretation would be at odds with the express language of the statute. *See Welsh,* 993 F.2d at 1275 ("While it is true that 'people' and not 'places' are the source of discrimination, in Title II Congress focused exclusively on prohibiting discrimination in *places of public accommodation* and not in every conceivable social relationship.") (emphasis in original).[3]

---

**2.** Most state courts that have construed the meaning of "place of public accommodation" under state civil rights laws premised on Title II have applied this analysis. *See Welsh v. Boy Scouts of Am.,* 787 F.Supp. 1511, 1523–30 (N.D.Ill.1992) (analyzing state court decisions under state laws analogous to Title II to determine whether a private organization unconnect-

ed to any facility was a place of public accommodation); *aff'd* 993 F.2d 1267 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993).

**3.** This conclusion is consistent with the "private club" exception to Title II, 42 U.S.C. § 2000a(e). This provision states:

■ Consistent with the language of the statute, we hold that Title II covers only places, lodgings, facilities and establishments open to the public, and applies to organizations only when they are affiliated with a place open to the public and membership in the organization is a necessary predicate to use of the facility. When the organization is unconnected to entry into a public place or facility, the plain language of Title II makes the statute inapplicable.

■ Although Clegg alleges in conclusory fashion that Cult Awareness is a place of public accommodation, he fails to allege sufficient facts to support that conclusion. Nor does he allege facts from which it could be concluded that Cult Awareness is closely connected to a "place" or "facility." Instead, he alleges in some detail that Cult Awareness is an organization that offers the public a variety of goods and services.[4] Clegg alleges that Cult Awareness sells books, provides speakers and seminars, owns a library of resource materials, and performs counseling and consulting services. These facts are insufficient to establish that the goods or services are sold, purchased, performed or engaged in from any public facility or establishment.

Nor may Title II coverage be inferred from Clegg's allegation that Cult Awareness provides speakers for "meetings, classes, conferences and conventions held at colleges, schools, clubs, churches and associations." The facilities where these events take place no doubt are "places," but Clegg fails to allege that Cult Awareness has any connection to a particular place of public accommodation. *Cf. Welsh,* 993 F.2d at 1269. Merely providing speakers who lecture at a variety of locations cannot be construed as having a connection to a "place of public accommodation" within the meaning of Title II.

## CONCLUSION

Clegg fails to allege facts tending to show Cult Awareness' activities depend upon or emanate from any particular facility or location, or that Cult Awareness is an organization closely connected with a "place of public accommodation." Clegg's claims of discrimination are not covered by Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (1988). The district court's order dismissing Clegg's complaint is AFFIRMED.

The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section.

42 U.S.C. § 2000a(e). Congress thus has drawn a distinction between the organization—a private club—and the facilities the organization operates. Only when the facilities are open to the public at large does Title II govern. *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

4. In support of his claim that Cult Awareness is subject to the Civil Rights Act of 1964, 42 U.S.C. § 2000a (1988), Clegg, referring to Cult Awareness as "CAN," alleged:

Defendant CAN is a national organization with 21 affiliate organizations around the United States. CAN is incorporated in California, and purports to be a non-profit educational organization, whose purpose is to "educate the general public as to religious rights, freedoms and responsibilities."

Defendant CAN was at all times relevant herein, a public accommodation and place of exhibition whose operations affect commerce within the meaning of 42 U.S.C. § 2000a. Defendant CAN purports to be a non-profit, non-exclusive corporation organized for charitable and educational purposes. CAN holds itself out as an organization which offers to the public a variety of goods and services, including the following:

a. Books, audio and video tapes;

b. Speakers for "meetings, classes, conferences, and conventions held at colleges, schools, clubs, churches and associations";

c. "Seminars" for business and professional groups;

d. A library of "resource materials, articles, books, audio and video tapes";

e. "Counseling" to individuals, couples and families; and

f. "Consulting" to professional counselors.

On information and belief, for all or nearly all of these alleged services, CAN charges a fee or fees to members of the public, and advertises that donations to CAN are tax deductible.