THE CETACEAN COMMUNITY,
Plaintiff,

v.

President of the United States, George W. BUSH and United States Secretary of Defense, Donald H. Rumsfeld, Defendants.

No. CV 02–00599 DAE BMK.

United States District Court,
D. Hawai'i.

March 7, 2003.

Lanny Alan Sinkin, Hilo, HI, for the Cetacean Community, plaintiff.

Ann D. Navaro, Maureen Rudolph, Kristen L. Gustafson, United States Department of Justice, Environment & Natural Resources Division, Washington, DC, Silas DeRoma, Environmental and Natural Resources Division, Wildlife and Marine Resources Section, Washington, DC, for George W. Bush, President of the United States of America, Donald H. Rumsfield, United States of America Secretary of Defense, defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

DAVID ALAN EZRA, Chief Judge.

Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing. After reviewing Defendants' motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motion to Dismiss.

### BACKGROUND

The instant action involves the United States Navy's development and utilization of low frequency active sonar ("LFAS"). Defendants claim that LFAS is "the only system capable of providing sufficient detection ability" at this time. Defendants' Motion to Dismiss ("Motion"), filed Jan. 9, 2003, at 7. One LFAS system is the Surveillance Towed Array Sensor System Low Frequency Active sonar ("SURTASS LFAS"), which the United States developed to detect foreign submarines. The Navy proposed the use of SURTASS LFAS "during routine training and testing as well as the use of the system during military operations" in a regulatory process. Motion at 8 (quoting EIS at p. ES–5). The Endangered Species Act ("ESA"), Marine Mammal Protection Act ("MMPA"), and the National Environmental Policy Act ("NEPA") set the parameters for the regulatory process.

### I. THE SURTASS LFAS REGULATORY PROCESS

#### A. NEPA

Pursuant to NEPA and Executive Order 12114, the Navy prepared an Overseas Environmental Impact Statement/Environmental Impact Statement ("EIS"). The EIS applied to the use of SURTASS LFAS during routine training and testing. It did not address the use of the system in armed conflict or direct combat support operations, nor during periods of heightened threat conditions, as determined by the National Command Authorities. The Final EIS was published in January 2001, and the Record of Decision ("ROD") was signed by the Navy on July 16, 2002.

#### B. MMPA

The MMPA requires that National Marine Fisheries Service ("NMFS") conduct a notice and comment process when processing a small take request, which allows the taking of marine mammals incidental to a specified activity. *See* 16 U.S.C § 1371(a)(5)(A) (2002). In August 1999, the Navy submitted an application to the NMFS for a five-year small take authorization under the MMPA for each SURTASS LFAS that would allow the taking of marine mammals incidental to the employment of SURTASS LFAS during training, testing, and routine military operations. On July 16, 2002, the Final Rule governing the incidental taking of marine mammals

and providing for issuance of one-year letters of authorization ("LOA") for SURTASS LFAS operations was published.

### C. *ESA*

The Navy consulted with NMFS under Section 7 of the ESA concerning the possible incidental taking of listed species, including marine mammals, sea turtles, and fish. In a Biological Opinion, dated May 30, 2002, NMFS indicated that employment of SURTASS LFAS as implemented by the ROD may adversely affect, but is not likely to jeopardize the continued existence of, endangered and threatened species. On August 16, 2002, NMFS issued its Supplemental Biological Opinion, which constituted its opinion on the effects of the LOA.

### II. *THE INSTANT LITIGATION*

On September 18, 2002, Plaintiff, the Cetacean Community[1] ("Plaintiff"), initiated this lawsuit. *See* Complaint for Declaratory Relief, Preliminary Injunction, Permanent Injunction ("Complaint"), filed Sept. 18, 2002. Plaintiff brought action "because low frequency sonar presents a direct threat to the well being, health, and continued existence of members of the community." Complaint at ¶ 61. In the Complaint, Plaintiff alleges three causes of action:

(1) Failure to Prepare an Environmental Impact Statement for Use of LFAS During Threat and Warfare Conditions in Violation of the NEPA and Administrative Procedure Act ("APA");

(2) Failure to Seek Letters of Authorization to Take Marine Mammals While Employing LFAS During Threat and Warfare Condition in Violation of the MMPA and APA; and

(3) Failure to Seek Consultation under the ESA Regarding the Use of LFAS During Threat and Warfare Conditions in Violation of the ESA and APA.

Plaintiff limits its Complaint to the "deployment of low frequency active sonar" "during threat and warfare conditions." Complaint at ¶ 62.

On January 9, 2003, Defendants President of the United States, George W. Bush and United States Secretary of Defense, Donald H. Rumsfeld (collectively, "Defendants") filed a Motion to Dismiss ("Motion"). Plaintiff opposed the Motion on February 20, 2003. *See* Plaintiff's Response to Defendants' Motion to Dismiss, filed Feb. 20, 2003 ("Opposition"). Defendants replied in support of their Motion on February 27, 2003. *See* Defendants' Reply in Support of Motion to Dismiss, filed Feb. 27, 2003 ("Reply").

### *STANDARD OF REVIEW*

In a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the plaintiff's allegations are not presumed to be truthful, and the plaintiff has the burden of proof that jurisdiction exists. *Thornhill Publishing Company, Inc. v. General Telephone & Electronics Corporation,* 594 F.2d 730 (9th Cir.1979).

A motion to dismiss pursuant to Rule 12(b)(6) will be granted where the plaintiff fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 755 (9th Cir.1994).

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of

---

**1.** "The Cetacean Community is perceived by the Human as consisting of Whales, Dolphins, Porpoises and containing approximately 80 species." Complaint at ¶ 59.

[his] claim which would entitle [him] to relief." *Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See id.* Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim. *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir. 1994).

## DISCUSSION

Defendants argue that Plaintiff's complaint should be dismissed "on a variety of grounds, including lack of standing, ripeness, failure to state a claim for which relief can be granted, lack of subject matter jurisdiction, and improper venue." Motion at 2.

## I. *STANDING*

It is well-established that a court may not craft its own interpretation of a statute if the statute is "plain and unambiguous on its face." *See Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). The Ninth Circuit explained that the "plain meaning" rule:

> stands for the notion that if the language of a statute is clear and there is no ambiguity, then there is no need to "interpret" the language by resorting to the legislative history or other extrinsic aids. Secondly, and more importantly, the rule stands for the proposition that in the vast majority of its legislation Congress does mean what it says and thus the statutory language is normally the best evidence of congressional intent.

*Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 421 (9th Cir.1979).

Defendants argue that the plain language of the respective statutes evidence Congress's intent to deny standing to marine mammals attempting to sue under MMPA, NEPA, APA, and ESA. For the reasons stated below, the court agrees and GRANTS Defendants' Motion to Dismiss.

### A. *Endangered Species Act*

■ Under the citizens' suit provision of the Endangered Species Act ("ESA"), "any *person* may commence a civil suit on his own behalf … to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof …." 16 U.S.C. § 1540(g) (2002) (emphasis added). ESA defines "person" as "an individual, corporation, partnership, trust, association, or any other private entity …." 16 U.S.C. § 1532(13) (2002). ESA separately defines "fish and wildlife" as meaning, "any member of the animal kingdom, including without limitation any mammal, fish, bird … amphibian, reptile, mollusk, crustacean, arthropod or other invertebrate, and includes any part, product, egg, or offspring thereof, or the dead body or parts thereof." 16 U.S.C. § 1532(8) (2002).

In *Hawaiian Crow ('Alala) v. Lujan,* 906 F.Supp. 549, 552 (D.Haw.1991), this court examined whether a bird has standing to sue under ESA. This court considered the plain language of ESA and concluded that it does not authorize a bird to sue because a bird is clearly not a "person" as defined in 16 U.S.C. § 1532(13). *Id. See also Coho Salmon v. Pacific Lumber Co.,* 30 F.Supp.2d 1231, 1239 n. 2 (N.D.Cal. 1998) (observing that, "[w]ithout delving into the vagaries of the term 'entity,' the court notes that, to swim its way into

federal court in this action, the coho salmon would have to battle a strong current and leap barriers greater than a waterfall or the occasional fallen tree"). For these same reasons, the court finds that the plain language of 16 U.S.C. § 1540(g) does not authorize a whale, dolphin, or porpoise to sue under ESA. The statutory language of ESA plainly evidences Congress's intent that those animals are not "persons" as defined under 16 U.S.C. § 1532(13) and therefore do not have standing to sue pursuant to 16 U.S.C. § 1540(g).

The court acknowledges two cases in which courts conferred ESA standing upon an animal plaintiff. *See Marbled Murrelet v. Pacific Lumber Co.,* 880 F.Supp. 1343 (N.D.Cal.1995); *Loggerhead Turtle v. County Council of Volusia County, Florida,* 896 F.Supp. 1170 (M.D.Fla. 1995). However, both cases relied upon *Palila v. Hawaii Dep't of Land & Natural Resources,* 852 F.2d 1106, 1107 (9th Cir. 1988), in which the Ninth Circuit stated, "As an endangered species under the Endangered Species Act, ... the bird (*Loxioides bailleui*), a member of the Hawaiian honeycreeper family, also has legal status and wings its way into federal court as a plaintiff in its own right." As other courts have recognized, however, this statement is dicta and does not constitute precedent binding upon this court. *See Hawksbill Sea Turtle v. Federal Emergency Management Agency,* 126 F.3d 461, 466 n. 2 (3d Cir.1997); *Coho Salmon,* 30 F.Supp.2d at 1239 n. 2. Thus, *Marbled Murrelet* and *Loggerhead* are not convincing authority. Instead the court re-affirms its *'Alala* decision and holds that animals are not "persons" with standing to sue under ESA.

For the reasons stated in this order, the court finds that, under the plain language of ESA, Plaintiff does not have standing to sue under the citizens' suit provision of ESA.

B. *Administrative Procedure Act— Marine Mammal Protection Act & National Environmental Policy Act*

■ Unlike ESA, the National Environmental Policy Act ("NEPA") and Marine Mammal Protection Act ("MMPA") do not provide a private right of action. *See Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1114 n. 14 (9th Cir.2002); *Natural Resources Defense Council v. Evans,* 232 F.Supp.2d 1003, 1018 (N.D.Cal.2002). Thus, citizens challenging actions taken under either NEPA or MMPA must do so pursuant to the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702 (2003). The APA provides:

> A *person* suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

*Id.* (emphasis added). Thus, only "persons" may bring an action under NEPA and MMPA, via APA. For purposes of APA, "'person' includes an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2) (2003).

In *Citizens to End Animal Suffering & Exploitation, Inc. v. New England Aquarium,* 836 F.Supp. 45 (D.Mass.1993), the court examined whether it could entertain an MMPA suit brought by a dolphin. The court relied upon this court's ruling in *'Alala,* and held that "MMPA expressly authorizes suits brought by persons, not animals." *Id.* at 49. The court explained, "If Congress and the President intended to take the extraordinary step of authorizing animals as well as people and legal entities to sue, they could, and should, have said so plainly." *Id.* Accordingly, the court refused to "impute to Congress or the President the intention to provide standing to a marine mammal without a clear statement in the statute." *Id.* The

court noted that, "as in *'Alala*, citizen groups, if they satisfy the standing requirements, could seek to obtain the relief the amended complaint requests for [the dolphin]." *Id.* The court therefore granted the defendant's motion to remove the dolphin's name from the caption. *Id.* at 50.

The court finds *Citizens to End Animal Suffering* persuasive. The plain language of APA limits standing to "persons," and the court finds that Congress did not intend to extend APA to confer standing upon animals. The APA provides an explicit definition for "person," and the court therefore refuses to impute to Congress or the President the intention to provide standing to whales, dolphins, or porpoises. Thus, like this court's analysis with respect to the ESA, Plaintiff does not have standing under APA, MMPA, or NEPA.

### C. *Associational Standing*

Plaintiff argues that it has standing to pursue this case as an "association." *See* Opposition at 22. The Ninth Circuit recognizes the following three-part test to determine when an association has standing to sue on behalf of its members:

(a) its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organization's purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Central Delta Water Agency v. United States,* 306 F.3d 938, 951 (9th Cir.2002). Here, the court concludes that Plaintiff's individual members, which consists of nonhumans, do not have standing to sue in their own right. Accordingly, Plaintiff is unable to satisfy the first prong of the test for associational standing, and is therefore unable to sue on behalf of its members.

### D. *Article III Standing*

Plaintiff argues, "Should the court not find that Plaintiffs to have standing based on a statute, the inquiry is then whether Plaintiffs meet traditional Article III tests for standing." Opposition at 20. Plaintiff fails to recognize, however, that it must meet both Article III and statutory standing requirements in order to pursue its case. *See Warth v. Seldin,* 422 U.S. 490, 498, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Public Citizen v. Dep't of Transp.,* 316 F.3d 1002, 1019 (9th Cir.2003) ("In addition to constitutional standing, a petitioner who brings a statutory enforcement action under the [APA] must meet its statutory requirements for standing").

Plaintiff seeks relief based upon ESA, NEPA, MMPA, and APA. As explained in detail above, Plaintiff is unable to meet these statutes' standing requirements since Plaintiff is not a "person." Thus, even if Plaintiff were able to meet its constitutional standing requirements, Plaintiff may not pursue its claim. Accordingly, the court need not determine whether Plaintiff is able to demonstrate Article III standing, and therefore DISMISSES Plaintiff's Complaint.

### II. *RIPENESS*

In addition to standing, Defendants argue that Plaintiff's claims regarding the use of SURTASS LFAS should be dismissed because they are unripe. Motion at 21–24. "The basic purpose of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Assoc. of Am. Medical Colleges v. United States,* 217 F.3d

1212

770, 779 (9th Cir.2000). In determining whether a case is ripe for adjudication, courts assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 779–80.

### A. *Fitness for Judicial Review*

An "agency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action." *Id.* at 780. The Ninth Circuit recognized that "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* The Supreme Court requires satisfaction of two conditions in order for agency action to be considered "final":

> First, the action must mark the "consummation" of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotations omitted).

Plaintiff recognizes that it must invoke the judicial review provisions of APA in order to challenge agency action. *See* Complaint at pp. 22, 24, 26; 5 U.S.C. § 702. Plaintiff alleges that Defendants violated NEPA, MMPA, and ESA because they failed to prepare an EIS, seek LOAs, and seek formal consultation. *Id.* Defendants argue, however, that Plaintiff's claims are not ripe for review under APA since "the Navy has not proposed to use the SURTASS LFA sonar system 'in armed conflict or direct combat support operations, nor during periods of height-

ened threat conditions, as determined by the National Command Authorities ....'"[2] Motion at 11; *See* Declaration of Joseph Johnson, attached to Notice of Filing Exhibit 1 to Defendants' Reply in Support of Motion to Dismiss, filed Mar. 3, 2003 ("Johnson Declaration"). Since the Navy has not even proposed to use SURTASS LFAS during threat and warfare conditions, the court finds that no final agency action under any statutory provision occurred. Thus, Plaintiff's claims are not fit for judicial review.

### B. *Hardship to Parties*

Under the second prong in evaluating ripeness, courts consider "the hardship to the parties of withholding court consideration." *Assoc. of Am. Medical Colleges*, 217 F.3d at 780. Under the hardship prong, the Ninth Circuit recognizes that "a pre-enforcement challenge to a regulation may be ripe where the impact of the regulation is 'sufficiently direct and immediate.'" *Assoc. of Am. Medical Colleges*, 217 F.3d at 783 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). "Courts typically read the *Abbott Laboratories* rule to apply where regulations require changes in present conduct on threat of future sanctions." *Id.*

Here, the court finds that the second prong of the ripeness consideration does not provide Plaintiff with a justiciable claim. Here, no agency has promulgated regulations dealing with Defendants' use of SURTASS LFAS during threat and warfare conditions. Accordingly, no regulations require Plaintiff to change its present conduct on threat of future sanctions, and thus, Plaintiff may not benefit from the hardship prong.

**2.** Plaintiff's argument that Defendants violated NEPA would be more viable if the Government proposed to use the system during threat and warfare conditions.

## C. Conclusion on Ripeness

### 1. SURTASS LFAS

The court finds that Plaintiff's claims regarding SURTASS LFAS is unripe at this juncture. First, there has been no final agency action for Plaintiff to challenge since Defendants have not even proposed the use of SURTASS LFAS in threat and warfare situations. Second, Plaintiff suffered no hardship from an agency regulation, since no agency has promulgated regulations dealing with Defendants' use of SURTASS LFAS during threat and warfare conditions. Moreover, Plaintiff's argument that its case is ripe because Defendants will likely avoid "compliance with the three statutes until an emergency situation arises that precludes judicial review of the failure to comply" is pure speculation, especially in light of Defendants' declaration that they do not plan to use SURTASS LFAS in "armed conflict or direct combat support operations" or "during periods of heightened threat conditions, as determined by the National Command Authorities." *See* Johnson Declaration.

Thus, in an effort to avoid premature adjudication and entanglement in abstract disagreements over administrative policies, and in an effort to protect federal agencies from judicial interference until the agencies issue formal decisions and until the challenging parties feel the effects of those decisions, the court finds that Plaintiff's claims regarding the use of SURTASS LFAS are not ripe for adjudication at this time. *See Assoc. of Am. Medical Colleges,* 217 F.3d at 779.

### 2. LFAS

In its Complaint, Plaintiff alleged that Defendants violated NEPA, MMPA, and ESA because they refused to follow proper procedures with respect to both the use of SURTASS LFAS systems specifically, as well as "other forms of LFAS." Defendants, in their Motion, do not address the ripeness of Plaintiff's claims regarding "other forms of LFAS." The court, therefore, will not rule on the ripeness of Plaintiff's claims regarding Defendants' use of other LFAS systems.

## III. PRESIDENT BUSH

■ Defendants argue that, with regards to Plaintiff's MMPA and NEPA claims, "Plaintiffs' claims against President Bush should be dismissed under Fed. R. Civ. P 12(b)(6) for failure to state a claim for which relief can be granted by the Court." Motion at 25.

APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704 (2002). However, the President of the United States is not an "agency" within the meaning of APA. *See Dalton v. Specter,* 511 U.S. 462, 469, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994). The Supreme Court explained:

> Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA. We would require an express statement by Congress before assuming it intended the President's performance of his statutory duties to be reviewed for abuse of discretion.

*Franklin v. Massachusetts,* 505 U.S. 788, 800–01, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992).

Here, Plaintiff brings its MMPA and NEPA claims pursuant to APA, and names President Bush as a defendant "in his capacity as a member of the National Command Authorities because the National Command Authorities will determine when a threat or warfare condition exists." Complaint at ¶ 64. However, since the

President is not an "agency" within the meaning of APA, Plaintiff cannot obtain judicial review under APA of its claims that the President violated, or will violate, MMPA or NEPA.

## IV. *NOTICE OF INTENT TO SUE*

ESA provides, " No action may be commenced [under its civil suit provision]-(i) prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation ...." 16 U.S.C. § 1540(g)(2)(A) (2002). The sixty-day notice requirement is jurisdictional, and "failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *Southwest Ctr. for Biological Diversity v. United States Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir.1998). The notice provision puts agencies on notice of a perceived violation, and provides them an opportunity to take corrective measures without litigation if warranted. *Id.*

Plaintiff concedes that it did not file a notice, as required by ESA. Opposition at 33. Instead, Plaintiff requests the court "to make an exception to the strict compliance rule to permit Plaintiffs to file a notice while holding litigation of Plaintiffs' ESA claim in abeyance until the expiration of the sixty days." *Id.* Plaintiff's request, however, would contradict the purpose of ESA's notice provision, which "is to give the federal government and any alleged violators an opportunity to comply, and thus render a citizen suit unnecessary." *Marbled Murrelet v. Babbitt*, 83 F.3d 1068, 1072 (9th Cir.1996). Thus, the court finds that Plaintiff is jurisdictionally barred from pursuing its ESA claims because it failed to comply with ESA's sixty-day notice provision.

## V. *VENUE*

Defendants argue that all of Plaintiff's claims should be dismissed because venue is improper, even if the court finds that Plaintiff has standing to pursue this claim and that Plaintiff's claims are ripe. Motion at 28. The court, however, finds it unnecessary to examine Defendants' argument since the court finds that Plaintiff does not have standing to pursue its claim.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion to Dismiss and therefore DISMISSES Plaintiff's Complaint in its entirety.

IT IS SO ORDERED.